Haas, Appellant, *v.* Zoning Board of
Adjustment.

Argued January 11, 1961. Before JONES, C.J.,
BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Robert S. Cohen,* for protestants, appellants.

*Lenard L. Wolffe,* Assistant City Solicitor, with him *James L. Stern,* Deputy City Solicitor, and *David Berger,* City Solicitor, for zoning board of adjustment, appellee.

*Walter W. Rabin,* with him *H. Mark Solomon,* for property owner, intervening appellee.

OPINION BY MR. JUSTICE MUSMANNO, March 28, 1961:

In May of 1959 Abraham Ginsburg (in accordance with the code of General Ordinances of the City of Philadelphia) applied to the Zoning Board of Philadelphia for a certificate to construct a convalescent home with accessory parking on a tract of land owned by him in the northeast section of the city. After a hearing at which residents of the area involved protested the granting of the permit, the zoning board of adjustment granted him two certificates: one for use of the property as a nursing or convalescent home and the other for the use of a certain portion of the ground as a private parking lot. Because of the peculiar configuration of the property, the Board also granted variances from requirements of the code with regard to yard space requirements.

Several of the protesting neighbors appealed to the Court of Common Pleas No. 4 of Philadelphia County, which reviewed the testimony, heard argument, and then affirmed the decision of the board. The protesting neighbors appealed to this Court. They argue that the proposed convalescent home will have an adverse effect upon the health, safety and welfare of the residents of the area. The record fails to support this argument.

It is obvious that the complainants objected to the convalescent home simply because it *is* a convalescent home and not because there would be or could be anything about such an institution which would deprive them of their rights. The picture the complainants painted of a convalescent home would more easily answer the description of a combined lunatic asylum, home for the incurables and refuge for victims of a plague than the establishment intended by the applicant for the zoning board certificate.

After a full hearing, the zoning board found that the fears of the complainants were wholly visionary and in no way coincide with reality.

It specifically declared: "That the protestants have presented no positive evidence to influence the decision of the Board that the use of the property as a convalescent home would be against the public interest, their sole objection being, that they do not want a convalescent home in their neighborhood."

One of the complainants objected because the home will be constructed of brick. The Zoning Board, instead of rejecting this complaint as frivolous, which it might well have, imposed the condition that the brick be cloaked from the neighboring houses by shrubbery. The home when built will accommodate a maximum of one hundred and fifty-eight patients, adequate nurses and a resident staff of approximately twelve persons.

The only question before this Court is whether the Zoning Board was justified in its findings and conclusions upon the evidence presented to it. (*Lance Appeal*, 399 Pa. 311.) In view of the fact that this property is zoned "A" Residential, it is thus available, under §14-203(2)(c) of the Philadelphia Code, for a convalescent or nursing home, provided a zoning certificate is obtained.

In the *Gage Zoning Case,* 402 Pa. 244, the complainants also objected to the erection of a convalescent home in an area zoned "A" Residential. The zoning ordinance in that case permitted the erection of hospitals and sanitoria when authorized as a special exception by the board of adjustment. In sustaining the lower court which authorized the convalescent home contemplated this Court said: "The appellant contends that one of the objects of the zoning ordinance was to conserve the value of the existing properties in the township. We do not so read the ordinance, but if it could be shown that in some degree a new or old house in the immediate vicinity of the Gages' property would now sell for less because of the convalescent home's proximity, we would still say that that would not be an adequate reason for prohibiting the use decreed by the lower court. The care, maintenance and cure of those who are ill is as much a matter of concern for organized society as the building and maintenance of homes for those who are well and able bodied. The citizenship of a person who becomes ill loses none of its vigor because of the debility of the body to which it is attached. Radnor Township, in appreciation of the duty it owes to ailing mankind, made specific provision for hospitals and sanitoria."

Since it is clear in the case at bar that the proposed use will not adversely affect the health, safety and welfare of the residents of the surrounding area, a denial of the requested certificate would have constituted an injustice to the landowner. The land, which is heavily wooded and criss-crossed by valleys and lowlands is subject to marooning inundation after rains. In addition, the boundaries of the plot form such a strange pattern that the land could not be used for single family dwellings, without the obtaining of variances, since it could not meet the requirements of the code with respect to frontage.

However, after fulfillment of the conditions imposed by the board, the land adjusts almost ideally to the type of use proposed by the owner. The convalescent home, which will be two stories high, will occupy only 8.5% of the ground, thus eliminating any possibility that it might infringe on the light and air due the community. Moreover, the building will be so enveloped in trees and shrubbery that it will not offend against the aesthetics of the neighborhood, assuming, although there is no indication of it, the nature of the establishment could disturb the excessive sensibilities of the healthy people in the vicinity.

The authorization given by the board carried the specific condition "That the ground shall be hard surfaced (macadam, concrete or asphalt) before the operation of the parking lot; that suitable barriers shall be erected; That no banners, flags or pennants shall be strung across the lot; That lights shall be focused on the lot in question and not glare into adjoining or adjacent properties; All lights on the premises are equipped with shields in order to focus the light directly upon the premises; And provided that the lights face away from any residences; Also there is to be no encroachment of cars over the sidewalk."

The complaint that the operation of the home would create traffic congestion vanished, if it potentially existed, in the face of the condition that off-street parking must be provided for 280 automobiles.

The appellants argue that the erection of the home, as blueprinted, violates §14-102(29) of the Code of General Ordinances of the City of Philadelphia, which provides that a rear yard must be the full width of the lot, and §14-203(3)(g) which provides that such a convalescent home be located at least seventy-five feet from any adjoining lot or lots. The irregular shape of Ginsburg's property makes compliance with these provisions impossible. Looking at the lot as

traced out in colored crayon on a plot map, it roughly resembles in shape a submachine gun with its narrow muzzle pointing into Welsh Road, the ammunition magazine and trigger assembly falling beneath, toward Grant Avenue, and the shoulder rest extending between Grant Avenue and Rising Sun Avenue. Either a variance had to be granted or the lot was not to be used for building purposes at all because it would be wholly impracticable to build any kind of a substantial structure which would have a rear yard the full width of the lot and would be located at least 75 feet away from any adjoining lot or lots. The zoning board thus provided for a variance, and, in doing so, it did not abuse its discretion under the law.

We are satisfied that the board properly granted the certificate for the construction of the convalescent home, as well as the certificate permitting use of a portion of the land for parking facilities, and that the complainants did not present evidence which warrants a reversal of the board's findings. (*Garner v. Zoning Bd. of Adjustment,* 388 Pa. 98; *Novello v. Zoning Bd. of Adjustment,* 384 Pa. 294).

Judge GUERIN in the Court below personally visited the property in question to examine for himself "the peculiar equities presented herein." We are additionally assured of the correctness of our decision by the statement made by Judge GUERIN after the visitation: "In the light of our examination, as well as the record herein, we are satisfied that the the Board's determination was both proper and legal."

Order affirmed.