608 A.2d 1017

BEECHAM ENTERPRISES, INC., Appellee,

v.

The ZONING HEARING BOARD OF KENNEDY TOWNSHIP, Appellee.

Appeal of MOTEL SIX, INC.

Supreme Court of Pennsylvania.

Argued March 7, 1991.

Decided May 15, 1992.

---

* This Order was voted upon prior to the death of Former Justice McDermott.

Frederick A. Boehm, Goehring, Rutter & Boehm, Pittsburgh, for appellant.

Avram Y. Rosen, Joel P. Aaronson, Pittsburgh, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

ZAPPALA, Justice.

The question in this case is whether the equitable doctrine of vested rights applies so as to permit the continued use of

a sign that exceeds the dimensional limits of the zoning ordinance.

The appellant, Motel Six, Inc., owns a four acre parcel of property in Kennedy Township, Allegheny County, on which, as the company's name suggests, it operates a motel. The appellee, Beecham Enterprises, Inc., owns a sixteen acre parcel directly across the street from the Motel Six parcel, on which is located the company headquarters. Both properties are located in a zoning district designated R–4, where a mix of residential and commercial uses is permitted.

On May 15, 1986, Motel Six filed an application with the Kennedy Township Zoning Hearing Board requesting variances from the zoning ordinance's limits on sign dimensions. A hearing on the request was set for July 24, 1986, and was advertised in a local newspaper. It is undisputed, however, that the property was not posted with notice of the hearing as required by Section 908(1) of the Municipalities Planning Code. Following the hearing, the Board approved the request and granted permission for two signs, one measuring 320 square feet. Eight months later, on March 18, 1987, Motel Six began installing the signs.

Shortly thereafter, on April 6, 1987, Beecham filed appeals with both the Zoning Hearing Board and the Court of Common Pleas seeking to void the variance. The court appeal was disposed of by the entry of a consent order remanding the matter to the Board "for the purpose of conducting a hearing de novo relative to the variance application...." In consenting to this order, the Board in effect determined that the property had not been properly posted and that Beecham had proven its allegation "that [it] had no notice, knowledge, or reason to believe" that the variance had been granted, and that, therefore, its appeal to the Board, though filed more than thirty days after the approval, was permitted under Section 915 of the Municipalities Planning Code, Act of July 31, 1968, P.L 805, No. 247, art. IX, § 915, repealed by the Act of Dec. 21, 1988, P.L. 1329,

No. 170, § 96, and replaced by 914.1 (Act of Dec. 21, 1988, P.L. 1329, No. 170, § 95, 53 P.S. 10914.1.[1]

On September 3, 1987, the Board conducted the new hearing on Motel Six's variance request and Beecham offered testimony as to the adverse effect of the sign on the Beecham property and on the character of the district. The Board again granted the variance request and Beecham appealed to common pleas court. The court permitted Motel Six to intervene and without taking further evidence dismissed the appeal, finding that Motel Six had a vested right under *Petrosky v. Zoning Hearing Board of Upper Chichester Township*, 485 Pa. 501, 402 A.2d 1385 (1979), which the court considered controlling. On further appeal, Commonwealth Court reversed, finding that Motel Six did not meet all the requirements set out in *Petrosky* for establishing a vested right in a permit. Specifically, the court found the case for vested rights lacking with respect to the fourth factor, "the expiration without appeal of the period during which an appeal could have been taken from the issuance of the permit," 485 Pa. at 507, 402 A.2d at 1388.

■ Motel Six argues that "[n]o court has ever interpreted this requirement to mean anything other than passage of the thirty day period in which an appeal *could have* been taken. No court has ever suggested that vested rights require not only the expiration of the appeal period but also

1. Motel Six argues that Beecham's appeal to common pleas court was untimely under 42 Pa.C.S. 5571(b) and that therefore the court had no jurisdiction to consider and remand the case to the Board. Even if this argument is correct, it ignores the fact that a separate appeal was filed with the Board and that this appeal was timely under section 915 of the Municipalities Planning Code, now section 914.1(a), because Beecham alleged and proved lack of notice. (Motel Six concedes that a party is permitted to file an "untimely" zoning appeal to the Board if it had no notice of the Board decision. Appellant's Brief at 15.) Thus even if the consent order of remand was a nullity, the Board properly considered Beecham's appeal, decided it was necessary to hold new hearings, and rendered a new decision granting the variance. The appeal from this decision was timely filed in common pleas court, which affirmed. It is from Commonwealth Court's reversal of the common pleas court's decision that this appeal is taken.

the certainty that no appeal *nunc pro tunc* might ever be pursued." Appellant's Brief at 16. (Emphasis in original.)

The flaw in this argument is the premise that the period in which an appeal could be taken is thirty days and the corollary characterization of Beecham's appeal as *nunc pro tunc*. As noted previously, the Municipalities Planning Code states that "[n]o person shall be allowed to file any proceeding with the board later than 30 days after [approval] if such proceeding is designed to secure reversal or limit the approval in any manner *unless such person alleges and proves that he had no notice, knowledge, or reason to believe that such approval had been given.*" (Emphasis added.) The statute authorizes an appeal beyond thirty days in the stated circumstances, and thus it cannot be said that such an appeal is taken after the time when it should have been.

Motel Six argues that if this view is accurate, "no landowner could substantiate or be secure in a vested rights claim because there is always the possibility of a *nunc pro tunc* appeal." Appellant's Brief at 16. While recognizing the visceral appeal of this argument, we must also note that if Motel Six's view prevailed, parties who could prove that they had no notice would be deprived of the opportunity to appeal granted by the legislature.

This conflict points up the equitable nature of the vested rights doctrine. A significant fact overlooked by Motel Six is that in almost all of the cases where a claim of vested rights was upheld, the challenge to the use came from the municipality or other government body. Because the municipality could not be heard to complain of a lack of notice of its own officers or boards, the "period within which an appeal could have been taken" (by the municipality) in these cases was in fact thirty days. The absence of any appeal, in other words the existence of a decision that *as between the parties* was final, was a factor that weighed in favor of the landowner. Such is not the case here, where the challenge to the use was raised by one who was not chargeable with notice of the initial approval of the use. Assuming, as it

appears, that Motel Six was entirely innocent of any wrong-doing—in the terms of *Petrosky*, that it had been diligent in attempting to comply with the law, had acted in good faith, had spent substantial unrecoverable funds, and that the public health, safety, and welfare would not be adversely affected by the use—the fact remains, as Commonwealth Court observed, that "Beecham is equally innocent of wrongdoing." 125 Pa.Commw. 20, 31, 556 A.2d 981, 986.[2] Although the Township could not be heard to oppose the signs, under the maxims "when the equities are equal, the law will prevail," and "equity follows the law," it would be inappropriate to find that Motel Six had obtained a right that *Beecham* could not contest.

■ Having established that Motel Six did not have a vested right to continue to use the signs, the question remains whether the variance was properly granted. Commonwealth Court correctly stated the standard of review as whether the Board abused its discretion or committed an error of law in granting the variance. The court also set out the statutory provision governing a board's review of variance requests [3] and reiterated the oft-stated high stan-

2. We also note that Beecham acted promptly to protect its interests, filing its appeals within eighteen days of the installation of the signs. Had Beecham delayed more than thirty days beyond when it knew or should have known of the presence of the signs, its appeal to the Board would have been untimely.

3. The Board may grant a variance provided the following findings are made where relevant in a given case:

(1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property, and that the unnecessary hardship is due to such conditions, and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located;

(2) That because of such physical; circumstances or conditions, there is no possibility that the property can developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property;

(3) That such unnecessary hardship has not been created by the appellant;

dards of proof necessary to obtain a variance. See *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983). We have carefully reviewed the record and find that there is nothing we can add to the Commonwealth Court's thorough analysis on this point.

> The Board's findings of fact do not include any findings regarding unique physical characteristics of the property resulting in unnecessary hardship.... Motel Six introduced no evidence that the physical characteristics of the property are such, that the land could not be used for a permitted use.... Motel Six did not present evidence that the hardship is unique or peculiar to the property as distinguished from a hardship arising from the impact of zoning regulations on an entire district.... [The record] fail[s] to establish that the 320 foot sign would represent the minimum variance which would afford relief.

125 Pa.Commw. at 33–34, 556 A.2d at 987. In short, the court "found no evidence that the property cannot be used for any permitted use or that the property has been rendered nearly valueless." [4] *Id.* We agree, and therefore affirm the order of the Commonwealth Court.

LARSEN and CAPPY, JJ., did not participate in the consideration or decision of this case.

> (4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare; *and*
> (5) That the variance, if authorized, will represent the minimum variance that will afford relief and will present the least modification possible of the regulation in issue.
> Municipalities Planning Code Section 912, 53 P.S. 10912 (emphasis added).

**4.** Motel Six makes an additional argument that Section 912(2) of the Municipalities Planning Code is not relevant and should not be applied to requests for variances from dimensional regulations. Otherwise, it is argued, "no dimensional variance can ever be justified for a structure accessory to an existing principal use," and "variances can never be granted for any identification sign because the property can always be used for its principal purpose or some other permitted use without the sign." Appellant's Brief at 23. This argument is essential-

ly a request that we relax the standards for the granting of variances in certain circumstances. We find no persuasive reason why we should alter these longstanding principles, and to the extent that these standards are required by the statute (and the ordinance), we cannot change them. This argument is better addressed to the appropriate legislative bodies.

This Court and the Commonwealth Court have, as the Appellant notes, approved *de minimis* dimensional variances where there was no proof that without the variance the property could not be reasonably have been devoted to any permissible use, *see, e.g., Pyzdrowski v. Pittsburgh Zoning Board of Adjustment,* 437 Pa. 481, 263 A.2d 426 (1970); *West Bradford Township v. Evans,* 35 Pa.Commw. 167, 384 A.2d 1382 (1978). We also noted, however, that "both types of ordinances are controlled by the same principles," while observing that "the effect upon the public interest of a use variance usually is greater than the effect of a variance necessitated by only a minor deviation from a lot restriction." *Pyzdrowski,* 437 Pa. at 490, 263 A.2d at 431. In the present case, the variance is anything but *de minimis.* The 320 square foot sign is not only seventeen times larger than the largest sign permitted in an "R" district, it is three times larger than the largest sign permitted in any district.