828 A.2d 1033

**Laura NETTLETON and Samuel Land Company, Appellees,**

v.

**ZONING BOARD OF ADJUSTMENT OF THE CITY OF PITTSBURGH, City of Pittsburgh, Elvidio Grande and Marianne DePlacido, Appellant.**

Supreme Court of Pennsylvania.

Argued March 3, 2003.

Decided July 22, 2003.

46

Blaine Allen Lucas, for Elvidio Grande and Marianne De-Placido, appellant.

Joel Peter Aaronson, James H. Roberts, Pittsburgh, for Laura Nettleton and Samuel Land Company, appellee.

George R. Specter, Pittsburgh, for the City of Pittsburgh.

Before CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN, and LAMB, JJ.

## *OPINION*

LAMB, Justice.

This zoning appeal requires us to clarify the conceptual basis for our decision reported as *Yocum Zoning Case,* 393 Pa. 148, 141 A.2d 601 (Pa.1958).

Appellants Elvidio Grande and Marianne DePlacido (Landowners) own an improved lot in the Seventh Ward of the City of Pittsburgh (City) known as 5301 Fifth Avenue (Property) in an RM–3, Residential Multi–Unit, Moderate Density zoning district as defined and regulated by the Pittsburgh Urban Zoning Code (Code). The Property is improved with a commercial one-story building seventeen feet in height with twenty-two basement parking spaces. The building is used for offices pursuant to a 1990 order of the City's zoning board of adjustment (Zoning Board) [1]. The building occupies virtually the entire lot and thereby violates all of the yard and setback regulations applicable to new construction in the zoning district. However, since the building antedates those regulations

---

1. Testimony adduced before the Zoning Board indicated that the building was initially constructed as a stable; that in about 1936 it was converted in use to a garage; and sometime thereafter to an automobile dealership and repair facility called Fifth Avenue Motor Cars. The Zoning Board's Zone Case No. 448–A of 1990, on remand from the court of common pleas following an appeal from the Zoning Board's denial of an application to construct a one-story, vertical addition and to convert the use of the building from that of a "major garage" to a medical office building resulted in a revision of the proposal to eliminate the addition and to change the proposed use of the building to offices generally. As so amended, the application was approved and, apparently, implemented. In Zone Case No. 186 of 1999 the Zoning Board, in a decision dated September 17, 1999, denied Landowners' application for variance and special exception relief needed to erect a two-story vertical addition and to increase the number of basement parking spaces in order to expand the office use. Since offices are not a permitted use in RM zoning districts (See Code § 911.02: Use Table; R.R. page 115a), the application refused in Zone Case No. 186 of 1999, unlike that here presented, involved the expansion of a nonconforming *use.* On September 21, 1999 the zoning administrator granted Landowners' application for an occupancy/building permit pursuant to Code § 922.02A for a two-story vertical addition to be used as five (5) dwelling units; that is, a use permitted by right in the RM–3 zoning district. Protestants' appeal to the Zoning Board from the issuance of the permit was docketed by the agency as Zone Case No. 286 of 1999.

and was lawful when constructed, it is permitted to continue as a protected, prior nonconforming use.

In September 1999, the city's zoning administrator granted Landowners a building and occupancy permit needed to expand the existing building vertically to a height of three stories or forty feet. Two neighboring property owners, Appellees herein (Protestants), appealed to the Zoning Board and argued that variance relief was required (but had not been sought and was not justified) to permit the proposed vertical addition and that the construction, if approved, would have the detrimental effect on the neighborhood and their properties of depriving them of air and sunlight.

Following a public hearing conducted on December 9, 1999, the Zoning Board upheld the action of the zoning administrator on the basis of findings and conclusions, *inter alia*, that the existing building is lawfully nonconforming as having no front, rear, or side yard setbacks; that the proposed vertical addition would comply with the applicable maximum building height regulations [2] and would not increase the existing yard or setback nonconformities; that the proposed use of the addition as and for five residences conforms to the applicable zoning use regulations; that the subject building is the only one-story structure on this block with at least five of the fourteen other buildings in this block fronting on Fifth Avenue being three or more stories in height; that the general topography in the area is such that any three-story structure constructed on the property—even if in conformance with all yard and setback regulations—would have the effect of creating shadows and cutting off air to the adjoining down-slope residential properties including those of Protestants; and in conclusion, that the zoning administrator correctly determined that the application is governed by *Yocum Zoning Case* which required issuance of the requested permits.

Protestants appealed to the Allegheny County Court of Common Pleas, which affirmed the Zoning Board on the

2. Specifically, the zoning administrator testified that the maximum permitted height would be fifty-five feet—fifteen feet higher than the proposed addition.

strength of *Yocum Zoning Case.* On further appeal, a panel of the Commonwealth Court reversed; distinguishing *Yocum Zoning Case* as limited in its proper application to minor or even *de minimis* regulatory encroachments not here involved and concluding that the case was instead governed by its decision in a factually similar case reported as *Chacona v. Zoning Board of Adjustments,* 143 Pa.Cmwlth. 408, 599 A.2d 255 (Pa.Cmwlth.1991) in which it disapproved the issuance of a variance. Landowners' appeal challenges the correctness of the Commonwealth Court's reading of *Yocum Zoning Case;* a matter of law concerning which this Court exercises plenary review.

Code § 921.03.D.1 having to do with the enlargement and expansion of nonconforming structures provides that:

A nonconforming structure may be enlarged, expanded or extended, in compliance with all applicable regulations of this Code, unless the enlargement, expansion or extension has the effect of increasing the degree of nonconformity or making a use or structure nonconforming in any other respect, subject to any applicable requirements of Section 922.02 (having to do with required permits).

■ The issue here presented, therefore, is whether the City's zoning authorities, the decision of which was affirmed by the court of common pleas on initial appeal, correctly determined that the proposed vertical addition would not have "the effect of increasing the degree of nonconformity" of Landowners' building as it was on September 21, 1999, at the time of issuance of the permit here challenged.

The factual circumstances before this court in *Yocum Zoning Case* centered on a two-story residence constructed for a single family and later converted for two-family use with an apartment on each floor. The extended first-floor living room at the westerly end and an enclosed porch at the easterly end each violated by about three feet a later-enacted, twenty-foot front yard setback regulation. In addition, the building was situated on the lot so as to violate a later-enacted side-yard requirement. The homeowner applied for a permit needed to

construct an addition to the building, which this Court described in the following terms:

> Appellees wanted to extend the second floor apartment frontward so that the front edge of the second floor would coincide with the front edge first floor approximately seventeen feet from the street line and upward one story in height. The contemplated construction would require no additional land area and no further encroachment on either the front yard or side yard "set backs".

*Yocum Zoning Case*, 141 A.2d at 603–604.

 In deciding that the zoning authorities erred in their refusal of the requested permit in *Yocum Zoning Case* this Court made initial reference to the nature of the protections afforded to preexisting nonconforming uses and structures; entirely lawful when constructed or initiated but violative of later-enacted zoning regulations. The protections afforded to such uses are, in this Commonwealth, of constitutional dimension. *Hanna v. Board of Adjustment*, 408 Pa. 306, 183 A.2d 539, 543 (Pa.1962), held that the continuance of nonconforming uses is countenanced because the refusal so to do "would be of doubtful constitutionality." This Court has said that the protection evolved as a conceived element of due process. *Molnar v. George B. Henne & Co., Inc.*, 377 Pa. 571, 105 A.2d 325, 329–30 (Pa.1954). More recently, the fundamental basis for the protection of uses and structures lawful when instituted, was identified as the "inherent and indefeasible" right of the citizens of this Commonwealth to "possess and protect property" guaranteed by Pa. Const. art. I, § 1. *PA Northwestern Distributors, Inc. v. Zoning Hearing Board of Moon Township*, 526 Pa. 186, 584 A.2d 1372, 1375 (Pa.1991). The continuance of nonconforming uses and structures is permitted notwithstanding the obstruction thereby of a public purpose in order to preserve the validity of zoning regulations which otherwise would be vulnerable to attack as working an uncompensated deprivation of these property interests. *Bachman v. Zoning Hearing Board*, 508 Pa. 180, 494 A.2d 1102,

1106 (Pa.1985).[3]

Indeed, as this Court wrote in *Yocum Zoning Case:* "accordingly, as the property was then used for lawful purposes, 'the city was without power to compel a change in the nature of the use, or prevent the owner from making such necessary additions to the existing structure as were needed to provide for its natural expansion so long as such additions would not be detrimental to the public welfare, safety and health.' " *Id.* at 604 (quoting *Gilfillan's Permit,* 291 Pa. 358, 140 A. 136, 138 (1927)).

Code § 921.03.D.1 incorporates these protective tenets. Our discussion of the vertical addition proposed in *Yocum Zoning Case,* includes the following:

By the contemplated extension of the second floor of their building appellees would not vary or change in any respect the use of both the building and land for residential purposes -....Nor do appellees plan to extend, enlarge or increase the nonconformity of the building to the zoning requirements; neither the front yard nor the side yard "set

3. In the case of nonconforming *uses,* the right to expand as required to maintain economic viability or to take advantage of increases in trade, is also constitutionally protected. "[A] nonconforming use cannot be limited by a zoning ordinance to the precise magnitude thereof which existed at the date of the ordinance; it may be increased in extent by natural expansion and growth of trade, neither is it essential that its exercise at the time the ordinance was enacted should have utilized the entire tract upon which the business was being conducted." *Humphreys v. Stuart Realty,* 364 Pa. 616, 73 A.2d 407, 409 (Pa.1950). *See also Silver v. Zoning Board of Adjustment,* 435 Pa. 99, 255 A.2d 506, 507–508 (Pa.1969) (invalidating as unconstitutional a zoning provision which prohibited any increase in the number of dwelling units in an apartment building lawfully nonconforming as to use); *Chartiers Tp. v. William H. Martin, Inc.,* 518 Pa. 181, 542 A.2d 985 (Pa.1988) (upholding the protected right of operators of a nonconforming landfill to increase the daily intake of solid waste). These protections are applicable only to nonconforming uses. Nonconforming structures, like that here involved, have no protected right to expand in violation of the applicable regulations. *Fagan v. Philadelphia Zoning Board of Adjustment,* 389 Pa. 99, 132 A.2d 279, 281 (Pa.1957); *Miller & Son Paving, Inc. v. Wrightstown Township,* 499 Pa. 80, 451 A.2d 1002, 1007 (Pa. 1982). As we discuss, however, the issue in this case is not the existence of a right to expand in violation of the applicable regulations; but the right to expand a nonconforming structure in conformance with those regulations.

back" requirements of the ordinance would suffer further encroachment by the proposed construction.

What appellees request is an extension *upward* or *vertically* of the front porch of the building to conform in height with the rest of the building and an extension *frontward* or *horizontally* of the second floor of the building so that its front line or edge will conform with the first floor's front line or edge. Only if the extension frontward and horizontally of the second floor be considered in the nature of a separate encroachment of the front yard requirement of the zoning ordinance could appellees' projected plan be considered an extension of a nonconforming use. The record fails to disclose any provision of the zoning ordinance which prescribes a maximum height for buildings in the use district which a vertical or upward extension of the building would violate.[4] That the proposed reconstruction would deprive adjoining property owners of light and air, or both, is more fanciful than real.

The proposed construction does not violate the Zoning ordinance by a vertical or upward extension of the building nor does the extension frontward and horizontally of the second floor substantially violate the front yard "set back" provision of the ordinance. Appellees' plan for this nonconforming building neither extends nor increases nonconformity and should be permitted by the zoning authorities.

*Yocum Zoning Case,* 141 A.2d at 605 (footnotes omitted, emphasis in the original).

Thus, the result in *Yocum Zoning Case* was unrelated to the degree to which the existing building violated the later-enacted regulations. It is true that the structure there involved

4. By this reference to the absence from the record of any zoning ordinance provision violated by the vertical expansion of a horizontally nonconforming building, the Court anticipates the effect of regulations of the type at issue in *Chacona v. Philadelphia Zoning Board of Adjustments,* 143 Pa.Cmwlth. 408, 599 A.2d 255 (Pa.Cmwlth.1991), discussed in the text below, which expressly prohibit such expansion. The policy considerations described in the Dissent, if shared by municipal governing bodies, may be directly addressed by the enactment of such regulations. We here decide only that in the absence of such regulations, *Yocum Zoning Case* controls.

violated the yard and setback requirements by about three feet or fifteen percent of the twenty-foot requirement. However, no analytic significance was ascribed to this circumstance beyond the added assurance it permitted that the public welfare would not be adversely affected by the proposal. We must reject the decision of the Commonwealth Court in this case insofar as it limits the applicability of *Yocum Zoning Case* to relatively minor existing nonconformities.

■ Indeed, the opinion of the Commonwealth Court can be read to limit *Yocum Zoning Case* to those regulatory violations eligible for relief as *de minimis*.[5] We disagree. The *de minimis* zoning doctrine authorizes a variance in the absence of a showing of the unnecessary hardship traditionally required to support such relief where the violation is insignificant and the public interest is protected by alternate means.[6] The doctrine applies equally to conforming and nonconforming structures. In those cases where the *de minimis* doctrine applies, there is no need to resort to any other theory of relief. If the *de minimis* doctrine had been available to the homeowner in *Yocum Zoning Case*, then our analysis of the protections afforded to nonconforming uses and of the meaning of the particular municipal regulations there at issue would have been wholly unnecessary.

In addition, as we have noted, the *de minimis* doctrine is limited in its applicability to variance cases. *Yocum Zoning Case* did not involve a variance application[7] and our decision

---

**5.** *"De minimis non curat lex"* is the legal maxim meaning that the law does not care for small or trifling matters. *Bailey v. Zoning Board of Adjustment of the City of Philadelphia*, 569 Pa. 147, 801 A.2d 492, 504 n. 20 (Pa.2002). In the zoning context, the maxim has acquired the particular meaning described in the text. *Id.* at 504 n. 21.

**6.** The zoning *de minimis* doctrine has its origin in such cases as *Pyzdrowski v. Board of Adjustment of the City of Pittsburgh*, 437 Pa. 481, 263 A.2d 426, 431–432 (Pa.1970) and *Crawford Zoning Case*, 358 Pa. 636, 57 A.2d 862, 864 (Pa.1948) and is limited to the grant of dimensional variance relief where the deviation is relatively minor and strict compliance is not necessary to protect the public interest. *Beecham Enterprises, Inc. v. Zoning Hearing Board of Kennedy Township*, 530 Pa. 272, 608 A.2d 1017, 1020 (Pa.1992).

**7.** As this Court there wrote: "Appellees seek neither a variance nor an exception to the zoning ordinance but rather what they term a natural

was not predicated on the availability of variance relief. Instead, the result in *Yocum Zoning Case* had as the primary component of its principled basis the nature of the protection afforded to lawful, nonconforming structures. That protection includes in this case, under the express provisions of the Code, the right to expand such a nonconforming structure so long as no regulatory nonconformity is thereby created or increased.[8] Materially identical protections were created by the regulations of Upper Merion Township at issue in *Yocum Zoning Case*.

The analysis in *Yocum Zoning Case* proceeded to its conclusion on the basis of this premise in combination with our interpretation of the meaning of the regulatory prohibition against any increase in an existing nonconformity. This Court there held that in cases where the regulation at issue controls only the horizontal location of the building footprint on the lot and the nonconformity concerns only an encroachment of the building footprint within an area of the lot from which building footprints are prohibited by later-enacted regulation, then a vertical addition to the building creating no further encroachment of the footprint into the prohibited area is a permitted use. Where these conditions are met and the regulations are materially similar to those here involved, the landowner must be granted leave to construct such a vertical addition. A variance is not required because the proposal contemplates a permitted use.

To repeat, a basis for our decision in *Yocum Zoning Case* was the conclusion that the proposed construction would not further violate the yard or setback regulations which, by their terms, controlled only the horizontal limits of construction; that is, the permitted outer bounds of the building footprint. Since the proposed vertical construction in *Yocum Zoning*

and logical extension of a nonconforming use." *Yocum Zoning Case*, 141 A.2d at 604. Ultimately, we agreed with this characterization of the proposal and with its legality.

8. As has been noted, nonconforming structures (in contrast to nonconforming uses) have no protected right to expand in violation or further violation of the municipality's regulations governing the area, bulk, dimension, or intensity of development.

*Case* had no effect on the horizontal limits of the pre-existing construction or the outer bounds of the existing building's footprint, this Court concluded that no increase in the existing nonconformity was thereby created.

The same considerations govern the analysis in this case. The vertical addition here proposed would have no effect on the existing building's footprint and, therefore, would not increase the encroachment of the building within the required front or side yard setback. Since the proposal would not have the effect of increasing the degree of nonconformity, the zoning authorities correctly determined that the addition was permitted by right pursuant to Code § 921.03.D.1.

This Court emphasized in *Yocum Zoning Case* that the decision was a product, in large measure, of the particular regulations of Upper Merion Township in which the subject property was located. We noted, for example, that no building height regulation would be violated by the proposal. No regulation there at issue purported to control the vertical extent of horizontal encroachments.

Just such a regulation was implicated in the decision of the Commonwealth Court reported as *Chacona v. Philadelphia Zoning Board of Adjustments,* 143 Pa.Cmwlth. 408, 599 A.2d 255 (Pa.Cmwlth.1991) on which the intermediate appellate court relied in this case as requiring rejection of Landowners' proposal. Unlike the regulations of Upper Merion Township applied in *Yocum Zoning Case* or those of the City of Pittsburgh here involved, the zoning code of the City of Philadelphia at issue in *Chacona* included a provision applicable particularly to buildings in lawful nonconformance with yard and set-back regulations which required:

> any new stories erected on such structures shall be constructed so as to fulfill the yard, court, occupied area, open area and rear yard area regulations, *which in such a case shall be applied on the level upon which such new stories are being erected.*

*Chacona,* 599 A.2d at 256–257 (emphasis supplied). The Commonwealth Court correctly described the intended effect of

the provision as follows. "The ordinance applies the yard, court, occupied area, open area and rear yard area regulations to new stories erected." *Id.* at 257. No challenge to the validity of the regulatory provision was presented in *Chacona.* The decisive effect of the provision on the construction proposed by the landowner in that case involving a one-story addition to the front half of a building that violated the front yard setback, was clear. The controlling effect of the regulatory provision there involved deprives *Chacona* of any precedential value in this case, which involves no such regulation.

Protestants also argued before the Zoning Board and the courts below that this matter is controlled by the Commonwealth Court's decision in *Angle v. Zoning Hearing Board of the Borough of Dormont,* 83 Pa.Cmwlth. 52, 475 A.2d 1371 (Pa.Cmwlth.1984), where a homeowner applied for variance relief to enclose a porch which violated the front yard setback regulation. The Commonwealth Court, in a decision by Judge (later President Judge) Craig, expressly guided by this Court's decision in *Kline Zoning Case,* 395 Pa. 122, 148 A.2d 915 (Pa.1959)[9], held that no variance was justified. *Kline,* which also involved a variance application, concerned a homeowner's proposal to enclose an encroaching porch in an attempt to ameliorate the respiratory complaints of members of his family. This Court held that such a personal articulation could not constitute the "unnecessary hardship ... which is caused by unique physical circumstances of the property" required to justify a zoning variance. *Larsen v. Zoning Bd. of Adjustment of City of Pittsburgh,* 543 Pa. 415, 672 A.2d 286, 288 (Pa.1996).

*Kline* and *Angle* differ fundamentally from the instant matter primarily in the nature of the applications involved. Specifically, in each of these cases a landowner sought relief from zoning regulations by a request for a variance. As we have emphasized, neither *Yocum Zoning Case* nor the matter

9. *Compare Appeal of Heidorn,* 412 Pa. 570, 195 A.2d 349 (Pa.1963). The result in these cases appears often to have turned on a detailed factual inquiry. Our task here, in part, is to explicate the principled foundation for the result in *Yocum Zoning Case.*

*sub judice* concern applications for variance relief or the entitlement of Landowners to such dispensation. *Kline* and *Angle* are, therefore, inapposite.

Finally, Protestants here argue, as they did below, that this case differs from *Yocum Zoning Case* in the quality of the evidence offered to demonstrate an adverse effect on neighboring properties to be caused by the proposed addition. To this end, one of the Protestants, identified at the hearing as an architect by profession, submitted to the Zoning Board a sketch purporting to illustrate the shadow that would be cast by the proposed addition over her property at noon each year on November 21 and January 21. Other participants before the Zoning Board sought to introduce photographs they had taken in an attempt to illustrate the effect of the proposal on the amount of sunlight reaching their properties.

It will be recalled that this Court commented on a similar concern expressed by neighboring property owners in *Yocum Zoning Case* and described it as "more fanciful than real." *Id.* at 605. Protestants argue that their concern was based on facts of record and can not properly be so easily dismissed.

We agree that Protestants here adduced evidence in support of their statements of concern for the effect of the proposal on the amount and duration of sunlight reaching their properties. However, Landowners attacked the weight of this evidence and presented evidence and argument having a contrary import. It was a task peculiarly within the scope of the Zoning Board's authority and expertise to evaluate the meaning and relative persuasive strength of this evidence. The Zoning Board concluded that any reduction in sunlight would be caused not by the proposed structure's setback encroachments or their vertical extension but by the topography in the area. The Zoning Board found that a two-story addition at this location to a one-story building in complete conformance with the applicable yard and setback regulations would have the same effect on sunlight reaching neighboring properties. Protestants offer no record basis for disagree-

ment with these findings nor do they take serious issue with this conclusion.[10]

Therefore, Protestants having offered no persuasive basis for distinguishing between this case and that reported as *Yocum Zoning Case*, we hold that the Zoning Board, as affirmed by the Court of Common Pleas of Allegheny County, correctly concluded that *Yocum Zoning Case* was here controlling.

The Order of the Commonwealth Court is reversed.

Justice EAKIN files a dissenting opinion in which Justice CASTILLE joins.

EAKIN, Justice, dissenting.

The request here was to add two new noncompliant stories to a one-story noncompliant building. The question is whether the vertical addition may be in derogation of the setbacks that bind every conforming property in this area. The majority says yes; I must conclude otherwise.

The majority relies on *In re Yocum*, 393 Pa. 148, 141 A.2d 601 (Pa.1958), for the proposition that if a nonconforming footprint is not extended horizontally by vertical improvements, the addition is permissible by right; if you remain within the footprint, you may ignore horizontal setbacks up to the maximum allowable height. While there is facial appeal to having such a simply phrased rule, I cannot believe the *Yocum* Court meant to create such fundamental inequality of treatment.[1]

---

**10.** The Zoning Board as factfinder is the sole judge of credibility and conflict in the testimony and has the power to reject even uncontradicted testimony that the Board finds to be lacking in credibility. *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637, 642 (Pa.1983). Our review of the Zoning Board's factual determinations is limited to a determination of whether the agency's findings are supported by substantial, record evidence. *Haas v. Zoning Bd. of Adjustment of Philadelphia*, 403 Pa. 155, 169 A.2d 287, 288 (Pa.1961).

**1.** In reality, the Court in *Yocum* only faced the question of whether the trial court abused its discretion in reversing a Board's decision made without factual findings or reasons for denying the application—what-

The nonconformity requested in *Yocum* was minimal, the extension of one end of an existing second story (which was conforming, set back 25'; the ordinance required 20'), to the edge of the nonconforming front of the first floor (which was set back only 17'). The nonconformity at issue was an extra 105 square feet, 3' on the second floor of a 35' wide row home. This Court stated: "[t]he proposed construction does not violate the zoning ordinance by a vertical or upward extension of the building nor does the extension frontward and horizontally of the second floor *substantially* violate the front yard 'set back' provision of the ordinance." *Yocum,* at 605 (emphasis added).

According to the record, the present nonconformity is certainly substantial. The lot is about 106' by 97' and the building is not set back at all; the setbacks otherwise required are 25' on three sides, and 10' on the other. Each story without setbacks would comprise about 10,282 square feet; if set back according to the ordinance, the dimensions would be about 56' by 62', and each story's area would be 3,472 square feet, only one-third the footprint of the existing building. We are involved with 13,620 square feet, not the 105 square feet of *Yocum.*

Allowing property owners to exploit existing nonconformities to expand contrary to ordinances that bind neighboring property owners places the latter at a significant competitive disadvantage for the future development of their property, and is fundamentally unfair to those properties that conform to the law. Any other *conforming* owner is told: "Sorry. We know your neighbor can build upwards without regard to the setbacks, but you, having a footprint that conforms to the zoning law, will not be excused from setbacks on any vertical expansion. He can ignore them because he's not in conformance—because you are conforming, you must continue to conform."

The proposed tripling of this property is not in conformity with the zoning law; the only issue is whether this is excused,

ever its language, the Supreme Court simply held the trial court did not abuse its discretion reversing a decision made without such findings.

and the only excuse given is the nonconformity of the first floor. It seems counterintuitive to permit the expansion of nonconformity when a goal of zoning is to reduce nonconformity.[2] This is "two wrongs make a right," and is manifestly unfair to owners whose properties conform in the first place.

*Yocum,* as interpreted by the majority, also raises equal protection problems; how can the law give this owner's building an advantage over another's conforming building? Excusing the existing nonconformity is one thing, but does that justify creating a right to ignore setbacks when building vertically that extends to the nonconforming property only? Allowing such disparate treatment does not flow from the reasons allowing the original nonconformity, nor does it flow from any apparent need unique to nonconforming properties. If application of the ordinance creates disparate treatment without reason or justification, the constitution is compromised.

I can find no reason in logic for a rule that gives nonconforming properties advantageous treatment. I find logic only in treating nonconforming properties the same as conforming ones, not better than conforming ones. I question not only the logic but the constitutionality of such disparate application of the zoning laws. I agree with the Commonwealth Court's conclusion that *Yocum* permits only *de minimis* extension of nonconforming structures, and tripling the size of this building is not *de minimis.* Accordingly, I must offer this respectful dissent from the thoughtful analysis of my colleagues.

Justice CASTILLE joins this dissenting opinion.

**2.** The purpose of setbacks is to promote access to light and air, enhance aesthetics, maintain privacy, insulate improvements from street activities such as noise, traffic, and exhaust fumes, influence the population density, and improve fire safety by limiting the potential of fire spread to other structures and ensuring access of fire apparatus. *See* Zoning and Planning Deskbook, Second Edition, § 3:6. Vertically extending the nonconforming structure clearly multiplies the disadvantages of the nonconformity. *See, e.g., Lewis v. Maine Coast Artists,* 770 A.2d 644, 652–53 (Me.2001).