IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Oliver                  :
                              : No. 1297 C.D. 2015
           v.           : Argued:  April 11, 2016
                              :
Indian Lake Borough Zoning    :
Hearing Board and Indian Lake   :
Borough,                     :
                              :
                 Appellants   :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                    HONORABLE MICHAEL H. WOJCIK, Judge
                    HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                         FILED:  May 23, 2016


Indian Lake Borough Zoning Hearing Board (ZHB) and Indian Lake Borough (Borough) appeal from the June 22, 2015 order of the Somerset County Court of Common Pleas (trial court), which sustained two land use appeals filed by John Oliver (Landowner) and reversed the ZHB's decision to uphold two violation notices relating to an outdoor wood furnace and a shed.


**Facts/procedural history**

Landowner owns a single-family dwelling situated on two lots comprising approximately two acres in Indian Lake Borough, Somerset County, Pennsylvania.  The property fronts Indian Lake, and the house is positioned at a higher elevation than the lake.  The driveway to Landowner's house is on a steep slope.  According to Landowner, there are times in the winter when ice and snow

cannot be plowed. Because it is sometimes impossible to drive a car up the driveway, Landowner planned to heat it by using an outdoor wood furnace.

On June 14, 2007, Landowner submitted a permit application for an outdoor furnace, approximately 8' x 7' x 5', and a site plan reflecting that the furnace would be located to the side of his garage. At the time, the Borough's zoning ordinance, Ordinance No. 99, did not reference outdoor furnaces, and the zoning officer approved the application. Six days later the Borough enacted Ordinance No. 144, which expressly prohibits outdoor furnaces in the Borough.

Landowner purchased the outdoor furnace and hired a contractor to install it. The contractor poured a concrete pad, installed the furnace on it, and connected it to tubing running to Landowner's driveway, garage, and home.

On May 15, 2008, Landowner applied for a permit to construct a 12' x 14' storage shed, or 168 square feet, which is the maximum size permitted by the Ordinance. However, Landowner purchased a pre-fabricated shed that was 192 square feet (12' x 16'), a 14% increase over the allowed dimensions.

By letter of November 10, 2008, a representative of St. Clair Resort Development complained to the zoning officer that Landowner's permit for the outdoor furnace had expired, the work was not completed, and the furnace was located in a different place from the site approved in the permit. On November 12, 2008, the zoning officer issued Landowner a written Notice of Violations (Notice). The Notice informed Landowner that the permit for the outdoor wood furnace had expired on June 14, 2008, and no waterlines or electrical lines had been connected to it. Additionally, the outdoor furnace was not situated in the location identified in the site plan. The Notice explained that because Landowner failed to request an

2

extension of the permit, a new permit for the outdoor furnace would be required but could not be approved under Ordinance 144.

The Notice also informed Landowner that, as he had previously been advised, the dimensions of his storage shed exceeded the size permitted under the Ordinance. Landowner was directed to remove the outdoor furnace from his property and remove or downsize the oversized shed within 30 days. Landowner appealed the Notice as to both violations, and the ZHB held a hearing on January 13, 2009.

The ZHB first considered the outdoor furnace. Zoning Officer Dean Snyder testified that public hearings on Ordinance 144 were held from March through August 2007. Landowner submitted his permit application for the outdoor furnace on June 6, 2007, and permit No. 2342 was issued under Ordinance 99. Snyder subsequently inspected the site on five occasions. On June 25, 2008, he noted that the furnace was not plumbed in and that it was in the wrong location; instead of being on the lake side of Landowner's garage, it was behind the garage toward the property line of St. Clair Properties. Reproduced Record (R.R.) at 531a-32a. Snyder identified photographs of the furnace taken on November 11, 2008, reflecting that no water or electric lines were connected. R.R. at 533a. Snyder stated that he received a complaint from a nearby property owner, checked the date of Landowner's permit, and found that it had expired.

During cross-examination, Landowner's counsel suggested that a permit was not required for the outdoor furnace since the use had not been regulated by Ordinance 99. Snyder acknowledged that Ordinance 99 did not include any reference to outdoor furnaces. However, he stated that Ordinance 99 required a building permit for the construction of any building, structure, or sign.

3

Snyder understood the furnace to be a structure, a term that was not defined by the Ordinance. Snyder additionally noted that, under Ordinance 99, no land could "be put to use" without a permit. R.R. at 536a-37a.

Snyder testified that current Ordinance 144 defines an outdoor furnace as "any device used to heat a dwelling or to produce heat for any reason . . . using . . . wood, oil, or coal . . . and which produces continuous smoke and which is designed to be installed outside of a building . . . ." R.R. at 535a. Snyder acknowledged that the outdoor furnace was currently located within the buildable area of the lot and stated that he would have approved a permit for the furnace in its current location. R.R. at 538a. Snyder testified that completion of the project, i.e., the water and electrical connection, would require installation of two-inch copper lines roughly three feet long from the furnace to the garage. He conceded that the change would not be a visible difference.

Snyder testified that Ordinance 144 prohibits outdoor furnaces anywhere in the Borough but permits indoor wood burning stoves. He explained that the distinction was based on the fact that indoor wood burning stoves and fireplaces have chimneys 30 feet high that carry smoke away, whereas outdoor furnaces are only five or six feet high and keep smoke lower to the ground. He agreed that a property owner could place an exhaust pipe or chimney on an outdoor furnace to carry smoke away. R.R. at 540a.

Terry St. Clair, the owner and developer of adjacent property, testified that an outdoor wood furnace is a prefabricated structure with a cylindrical chamber inside, and he believed that applicable building codes would require the structure to have an 18-foot chimney.[1] St. Clair also opined that smoke from an

_____

[1] Landowner stipulated that he would increase the height of the chimney. R.R. at 543a.

4

outdoor furnace would create a major health hazard and adversely affect property values.

Landowner testified that he spent about $35,000 on the outdoor furnace and submitted invoices and cancelled checks. He explained that the furnace itself was just one component of the project, which included costs for pipes, valves, copper fittings and tubing, a concrete pad, and interior plumbing. Landowner stated that heating his steep driveway was important because he intended to live in the house permanently.

Landowner also testified that the electricity had been run from the house to the garage. He said that he believed that the furnace was completed because it could be used to burn things without further alteration. He stated that he changed the location of the furnace to please his wife and that he did not think he needed to get permission to do so. R.R. at 545a-46.

Landowner argued that since Ordinance 99 did not address outdoor furnaces, the furnace was an unregulated device under Ordinance 99 for which no permit was ever required. He noted that Ordinance 144 defines an outdoor furnace as a "device," and stated that, while the Ordinance does not define "device," that term is clearly distinct from "building," "structure," and "sign," things that require a permit under both Ordinances.

He also argued that the remaining work – the installation of two three-foot copper lines - is insignificant in light of the substantial funds he expended on the project. Landowner's is the only outdoor furnace in the Borough, and he argued that he cannot be prevented from completing it by the Borough's adoption of a new ordinance. He also argued that he should not be penalized for changing

5

the location of the outdoor furnace when the zoning officer admitted that the permit would have been approved for the current site. R.R. at 549a.

Alternatively, Landowner argued that, under Snyder's interpretation, Ordinance 144 is exclusionary and thus unconstitutional. R.R. at 549a-50a. The Borough responded that Landowner's permit was issued under Ordinance 99, and, therefore, interpretations of Ordinance 144 are irrelevant. According to the Borough, photographs submitted into evidence reflect that the work on the outdoor furnace was not completed within 12 months and there was no dispute that the furnace was not fully assembled and operational when the permit expired. The Borough noted that the current location is inconsistent with the site plan and asserted that whether Snyder would have approved the placement of the furnace at a different location is also immaterial.

After a brief recess, the ZHB next considered the shed. Landowner testified that he initially was not aware that he needed a permit for a shed. He stipulated that he first purchased a 12' x 16' storage shed, then he applied for and received a permit for a 12' x 14' shed, and subsequently he requested a dimensional variance. Landowner indicated that he would be willing to cut two feet off the pre-made shed if the variance was denied. He also admitted that there was no unnecessary hardship.

However, Landowner stated that he owns two lots and that the shed was situated roughly in the center of his property, noting that because the lots were very steep he did not have many options for placement of a shed. He testified that he thought that he could have two sheds given that he owns two lots. Landowner stated that it would be wasteful to cut off two feet and asserted that he was only asking for a *de minimis* variance.

6

As to the outdoor furnace, the ZHB found that Landowner obtained a building permit on June 14, 2007, under Ordinance 99, which provided that "all building permits shall expire one year from date of issuance." R.R. at 400a. The permit was granted based on the site plan indicating the intended location of the furnace. The outdoor furnace was not completed within the required one-year time frame, and it was placed in a different site than was reflected in the application. (ZHB's Findings of Fact Nos. 11 A-I.) The ZHB concluded that Landowner was not entitled to a variance by estoppel because, *inter alia,* the outdoor furnace was not an illegal use. Citing photographs showing a structure with a roof, sides, bottom and doors and the furnace housed within, (Exhibit B), the ZHB also agreed with Snyder's opinion that the furnace was a building or structure for which a permit was required. Therefore, the ZHB upheld the violation notice with respect to the outdoor furnace.

The ZHB also upheld the violation notice as to the storage shed. It denied Landowner's request for a variance, reasoning that any hardship was self-induced.

Landowner appealed both decisions to the trial court. While those appeals were pending, Landowner applied for a permit to construct a 64-square-foot addition to his garage to enclose the furnace. Landowner alleged that the zoning officer suggested that action in order to bring the furnace into compliance with Ordinance 144 (*i.e.*, it would no longer be an outdoor furnace), but the application was denied under Ordinance 144's explicit prohibition of outdoor furnaces. Landowner appealed the denial of that application to the ZHB, and after the ZHB denied his appeal, Landowner also appealed that decision to the trial court, which consolidated the three appeals.

7

The trial court deferred to the ZHB's determination that the outdoor furnace was a building or structure for which a permit was required. However, the trial court concluded that the ZHB's finding that the furnace was not completed within one year was not supported by substantial evidence. The court noted that the concrete slab had been poured, the furnace had been placed on it, and the electrical and plumbing work required to connect the furnace to the house, garage, and driveway for heating had been completed. The trial court found that while the furnace had not been connected or fired up, it was operational. Concluding that the evidence established that the outdoor furnace was "substantially completed" when the permit expired, the trial court reversed the ZHB's contrary determination. Additionally, the trial court determined that while submission of a site plan was required, the change of location from beside the garage to behind it was *de minimis* and insufficient to establish an ordinance violation. After holding that the ZHB erred in denying Landowner's appeal, the trial court further concluded that retroactive application of Ordinance 144 would be constitutionally improper.

Addressing the shed, the trial court concluded that, since the shed is only two feet longer than the Ordinance allows and it is situated on two lots, the difference in size is *de minimis* as a matter of law.

Accordingly, the trial court sustained Landowner's appeals as to the furnace and the shed and dismissed the appeal from the denial of a garage addition permit as moot. The Borough now appeals to this Court.

## Discussion

Where, as here, the trial court does not take additional evidence, our review is limited to determining whether the zoning hearing board abused its discretion or

8

committed an error of law. *In re Thompson,* 896 A.2d 659, 666 n. 4 (Pa. Cmwlth. 2006). A zoning hearing board abuses its discretion when its findings of fact are not supported by substantial evidence. *Id.* Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

The Borough first argues that the trial court erred in reversing the ZHB's determination that Landowner violated the Ordinance because the outdoor furnace was not completed before the permit expired and the furnace was built in a different location from that shown in the site plan. The Borough asserts that when Landowner's permit expired, the outdoor furnace was not connected to anything and was not capable of heating the driveway or the house. Heating lines in several sections of the driveway and pipes between the furnace and the house had not been installed. The furnace was assembled on top of, but was not connected to, the concrete pad. Further, Landowner did not seek an extension of the permit. The Borough also argues that Landowner violated the Ordinance when he unilaterally constructed the furnace in a location other than that identified and approved in the permit. According to the Borough, its decision is supported by substantial evidence and the trial court erred by substituting its own view of the evidence for the ZHB's findings.

Landowner responds that Ordinance 144 defines an outdoor furnace as a "device," and he argues that the outdoor furnace was an unregulated "device" for which no permit was necessary. Landowner also asserts that the ZHB erred in determining that the furnace was a building or structure that required a permit. He notes that where doubt exists as to the intended meaning of the language of an ordinance, the ordinance is to be interpreted in favor of the property owner.

9

*Phillips v. Zoning Hearing Board of Montour Township*, 776 A.2d 341, 344 (Pa. Cmwlth. 2001). Additionally, Landowner observes that zoning ordinances are to be construed in accordance with the plain and ordinary meaning of their words, *id.*, and he maintains that the plain meaning of the term "device" cannot be included in the definition of "building" or "structure." He further argues that neither ordinance contains a requirement that work be "completed" within one year. Moreover, Landowner asserts that the trial court properly found that the work was completed.[2]

With respect to these issues, we defer to the ZHB's interpretation of the Ordinance.

> [A] zoning hearing board is the entity charged with the interpretation and application of the zoning ordinance. It is well settled that a zoning hearing board's interpretation of its own zoning ordinance is entitled to great weight and deference from a reviewing court. This principle is also codified in Section 1921(c)(8) of the Statutory Construction Act of 1972, 1 Pa. C.S. §1921(c)(8). The basis for the judicial deference is the knowledge and expertise that a zoning hearing board possesses to interpret the ordinance that it is charged with administering. *Smith v. Zoning Hearing Bd. of Huntingdon Borough*, 734 A.2d 55, 57-58 (Pa. Cmwlth. 1999) (citations and footnote omitted).

*Tri-County Landfill v. Pine Township Zoning Hearing Board*, 83 A.3d 488, 510 (Pa. Cmwlth. 2014). In addition to the deference accorded to the ZHB's interpretation, the photographs of the outdoor furnace, showing a roof, walls, door, etc, support the ZHB's determination that the furnace was a structure.

---

[2] Landowner's argument that Ordinance 99 entitled him to an additional 18 months to complete the project was not raised before the ZHB and is waived on appeal. His argument that Ordinance 144 is unconstitutional is not relevant to the ZHB's determinations concerning the expiration of the permit and location of the furnace.

Furthermore, Landowner's interpretation of the Ordinance as not requiring completion of work within a year renders the one-year expiration language meaningless.

The determination of whether the furnace was completed within the one-year period is a question of fact. Our review of the ZHB's factual determinations is limited to determining whether the ZHB's findings are supported by substantial, record evidence. *Nettleton v. Zoning Hearing Board of Pittsburgh*, 828 A.2d 1033, 1041 n.10 (Pa. 2003); *Haas v. Zoning Board of Adjustment of Philadelphia,* 169 A.2d 287, 288 (Pa. 1961). The ZHB as factfinder is the sole judge of credibility and evidentiary weight and has the power to reject even uncontradicted testimony. *Valley View Civic Association v. Zoning Board of Adjustment,*, 462 A.2d 637, 642 (Pa. 1983); *Taliaferro v. Darby Township Zoning Hearing Board,* 873 A.2d 807, 808-09 (Pa. Cmwlth. 2005). It is the function of a zoning hearing board to weigh the evidence before it, and a reviewing court may not substitute its interpretation of the evidence for that of a zoning hearing board. *Id.* Appellate review of the ZHB's findings of fact is limited to a substantial evidence analysis. *Haas.*

In this case, the ZHB's finding that the outdoor furnace was not completed within the one-year time frame is not supported by substantial evidence. Rather, the record reflects that a concrete slab had been poured, the operational outdoor furnace was situated on top of it, and the electrical and plumbing work necessary to connect the furnace to the house, garage, and driveway for heating had been finished. Zoning Officer Snyder confirmed that the outdoor furnace was capable of burning and that the only steps necessary to "complete" it were the attachment of two two-inch copper lines, about three feet in length, from the

11

furnace to the garage and an electrical connection. R.R. at 538a-40a. Snyder also confirmed that the furnace was situated within the buildable area of the lot and that he would have approved the permit for the furnace at that location. R.R. at 538a. Under the totality of the circumstances, we conclude that the record does not support the ZHB's decision to uphold the violation notice with respect to the outdoor furnace.

The Borough next argues that the trial court erred in reversing the ZHB's denial of a variance for the shed because Landowner did not meet the criteria for a dimensional variance or a *de minimis* exception. Again, the Borough argues that the trial court improperly substituted its judgment for that of the ZHB.

Landowner argues that the ZHB erred in denying his request for a two-foot dimensional variance because the deviation from the Ordinance maximum shed size was *de minimis* under the circumstances. We disagree. When the traditional requirements for a variance are not met, a zoning board may grant a variance under the *de minimis* doctrine if the requested variation is minor and rigid compliance with the ordinance is not necessary to protect public policy interests. *McCarry v. Haverford Township Zoning Hearing Board*, 113 A.3d 381, 386 (Pa. Cmwlth. 2015). The grant of a variance under the *de minimis* doctrine is based on the circumstances of each case. *Id.*

Importantly, "there is no general right to a *de minimis* variance in Pennsylvania, and the decision of whether to grant such a request is left to the discretion of the [ZHB]." *200 West Montgomery Ave. Ardmore, LLC v. Zoning Hearing Board of Lower Merion Township*, 985 A.2d 996, 1001 (Pa. Cmwlth. 2009). We must be mindful that "the *de minimis* doctrine is an extremely narrow exception to the heavy burden of proof that a party seeking a variance must

12

normally bear." *Leonard v. Zoning Hearing Board of Bethlehem*, 583 A.2d 11, 13 (Pa. Cmwlth. 1990) (holding that a 6.25% deviation from open air requirements was not *de minimis* despite the presence of other lots in the neighborhood with similar deviations). Although there is no dispute that Landowner owns two lots, he offered no testimony or other evidence to establish any hardship in support of his request for a dimensional variance for the shed. He does not challenge the ZHB's findings that he was aware of the Ordinance's 168-square-foot restriction or its finding that any hardship was self-induced. Even under the more relaxed standard for establishing unnecessary hardship for a dimensional variance, *some* unnecessary hardship must be shown. *Hertzberg v. Zoning Hearing Board of Adjustment of Pittsburgh*, 721 A.2d 43, 50 (Pa. 1998); *Tidd v. Lower Saucon Township Zoning Hearing Board*, 118 A.3d 1, 8 (Pa. Cmwlth. 2015).

That the ZHB could have granted a variance under the *de minimis* doctrine in this case does not alter the fact that the ZHB acted within its discretion to deny the variance in this instance. Thus, we conclude that the trial court erred in reversing the ZHB's denial of the variance for the shed.

Accordingly, we affirm that portion of the trial court's order reversing the ZHB's decision as to the outdoor furnace; we reverse that portion of the trial

13

court's order reversing the ZHB's decision as to the variance for the shed and reinstate the ZHB's decision in this regard.[3]

MICHAEL H. WOJCIK, Judge

---

[3] The Borough also argues that the trial court erred in ruling that Ordinance 144 would not apply to Landowner's furnace, where that issue was only relevant to the land use appeal that the trial court dismissed as moot. Landowner likewise addresses Ordinance 144 and argues that its exclusion of outdoor furnaces is unconstitutional. We agree that the trial court erred in addressing this constitutional issue prematurely. However, because the ZHB did not rely on Ordinance 144 in its decision, the trial court's discussion in this regard is merely dicta.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| John Oliver | : |
| | : No. 1297 C.D. 2015 |
| v. | : |
| | : |
| Indian Lake Borough Zoning | : |
| Hearing Board and Indian Lake | : |
| Borough, | : |
| | : |
| Appellants | : |

# O R D E R

AND NOW, this 23rd day of May, 2016, the order of the Somerset County Court of Common Pleas, dated June 22, 2015, is affirmed in part and reversed in part in accordance with the foregoing opinion.

_____
MICHAEL H. WOJCIK, Judge