623 A.2d 908

**M & M SUNOCO, INC.**

v.

**UPPER MAKEFIELD TOWNSHIP ZONING HEARING BOARD**

**UPPER MAKEFIELD TOWNSHIP**

v.

**Joseph P. MATHEWS, Sr.**

**Appeal of Joseph P. MATHEWS, Sr., and M & M Sunoco, Inc., Appellants.**

Commonwealth Court of Pennsylvania.

Argued Nov. 16, 1992.

Decided March 18, 1993.

John A. VanLuvanne, for appellant.

Stephen B. Harris, for appellee Upper Makefield Tp.

Before COLINS and FRIEDMAN, JJ., and LORD, Senior Judge.

COLINS, Judge.

Joseph P. Mathews, Sr., owner and operator of a gasoline service station, M & M Sunoco, Inc. (M & M), appeals from an order of the Court of Common Pleas of Bucks County (Com-

mon Pleas) affirming the decision of the Zoning Hearing Board (Board) of Upper Makefield Township (Township), which denied M & M's request for a special exception and variance to build a canopy over gasoline pumps situate on M & M's premises. We affirm.

Two different versions of the canopy were initially proposed by M & M, but the Board based its denial upon evidence relating only to the larger of the proposed canopies. However, at a hearing held before Common Pleas on November 1, 1990, the parties stipulated that M & M's appeal of the Board's decision would also apply to its proposal for the smaller canopy. On June 12, 1991, Common Pleas issued an opinion and order affirming the Board's denial of M & M's request. Subsequently, on July 9, 1991, Common Pleas granted M & M's petition for reconsideration, because it had based its June 12 opinion on an incorrect standard of review. After examining the record, exhibits and plans submitted by the parties, Common Pleas, by an opinion and order issued on October 30, 1991, again denied the special exception and variance for both the large and small versions of M & M's proposed canopies, and made the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. M & M Sunoco is a gasoline service station on the corner of Taylorsville Road and Route 532 in Upper Makefield Township. The station is zoned VC (Village Commercial) and is considered a nonconforming use for the district.

2. In 1989, M & M hired Crompton and Seitz, contractors, to perform certain work on the M & M site. The work included removal and replacement of underground fuel storage tanks, installation of a new vapor recovery system, and a new leak detection system. Crompton and Seitz obtained the permits necessary to perform the required work.

3. At the same time that the work was being performed on the tanks, M & M desired to install new computerized gasoline pumps and erect a canopy, allegedly to protect the computer in each of the new pumps from the elements, and

to afford protection for patrons who would be pumping their own gas. The representative of Sun Refining and Marketing stated that there were ways to protect and light the pumps other than by building a canopy (N.T. 3/8/90 at p. 15).

4. M & M proposed two different canopies. The larger would measure 30 feet by 52 feet in area and is 18½ feet high. It would extend approximately 29 feet into the required 50 foot front setback zone. The smaller canopy was exactly nine feet shorter and would still violate the 50 foot front setback requirement.

5. The canopy was approximately eighty percent complete, when on January 12, the Township issued a stop, cease and desist order on Crompton and Seitz for failure to obtain the necessary permits for the canopy. Two more stop, cease and desist orders were issued and served on January 15 and 18, respectively.

6. On January 29, 1990, Upper Makefield Township filed a complaint in equity and a petition for preliminary injunction to force the removal of the canopy due to M & M's failure to obtain the required permits to erect the canopy.

7. Pursuant to a partial settlement agreement, the Township agreed to continue the hearing to allow M & M to pursue its remedies before the Zoning Hearing Board. M & M filed an application with the Upper Makefield Zoning Hearing Board for a special exception for the expansion of a nonconforming use, a variance from the front yard setback requirements of the Newtown Area Joint Municipal Zoning Ordinance and an appeal from the issuance of the stop, cease and desist orders. (The appeal from the stop, cease and desist orders has been abandoned, N.T. 3/29/90 at p. 30).

8. In their decision dated July 24, 1990, the Zoning Hearing Board denied both the special exception to expand a nonconforming use and the variance to encroach into the front yard setback.

9. A hearing was held before this Court on November 1, 1990.

## CONCLUSIONS OF LAW

1. The use of the premises as a gasoline service station is a nonconforming use.

2. The gasoline pumps, light standards and concrete island that existed prior to the new canopy were nonconforming structures, because of their location within the front yard setback.

3. The building of the canopy does not qualify as either a modernization of a nonconforming use nor as an expansion of a nonconforming structure.

4. The canopy is a new structure.

5. The building of the canopy is not in the interests of the public health, safety and welfare.

6. The appellants have failed to prove that a denial of the variance is an unnecessary hardship.

7. The requests for a special exception and a variance were properly denied.

In view of Common Pleas having decided this matter de novo and on the merits, the issues for our determination are: (1) whether substantial evidence supports Common Pleas' decision that M & M failed to meet the requirements for a special exception to expand its non-conforming use under Article XII, Sections 1208.A. and 1208.B., respectively, of the Newtown Area Joint Municipal Zoning Ordinance of 1983 (JMZO);[1] and (2) whether substantial evidence supports Com-

1. Article XII, Section 1208.A. of the JMZO, governing expansion of a nonconforming use, provides as follows:

A. Expansion of a Nonconforming Use. A use that does not conform to the use regulations of the district in which it is located may not be expanded more than twenty-five percent (25%) in floor area, land area, or building volume, devoted to such use. Such expansion shall be permitted only by special exception, provided:

1. The proposed expansion shall take place only upon the lot containing the nonconformity or upon lots bordering the lot containing the nonconformity provided all such lots were held in single and separate ownership at the time the use became nonconforming.

2. The proposed expansion shall conform with the dimensional requirements of the use to be expanded or the requirements of the district in which the said expansion is located, whichever is the more restrictive, as contained in this Ordinance. Such requirements shall

mon Pleas' decision that M & M failed to satisfy the requirements for a dimensional variance from the setback requirements of Article VI, Section 600.B. and Article VIII, Section 803.E–10. of the JMZO.[2]

In requesting the special exception, M & M notes that its original concrete pump island, situate 30 feet from the curb line, preceded the enactment of the JMZO with its 50–foot front yard setback requirement for any structure in the district zoned Village Commercial (VC). M & M's premises, therefore, in addition to being nonconforming as to use (a service station located within the VC district), is also nonconforming as to dimensional criteria. It is M & M's contention that construction of the smaller proposed canopy would extend only nine feet into the front yard setback, no nearer to the property line than the edge of the new concrete pumping island that replaced the former island. M & M further avers that its request for a special exception and variance allowing for modernization of its facilities by constructing a canopy with improved lighting over newly installed electronic pumps,

> include but not be limited to those pertaining to area, building height, parking, sign, yard, and buffer yard.
> Article XII, Section 1208.B. of the JMZO, governing expansion of a nonconforming structure, provides as follows:
>> B. Expansion of a Structure. A structure that does not conform with the setback, yard, building height, or other dimensional regulations of the district in which it is located may be extended along the existing nonconforming building line, provided the extension or addition is no closer to the side, rear or front boundary line than the existing nonconforming structure.
>
> 2. Article VI, Section 600.B. of the JMZO sets forth a Table of Area and Dimensional Requirements indicating a minimum lot width at building setback line of 60 feet (with sewer facility) and 150 feet (with on-lot sewage disposal).
> Article VIII, Section 803.E–10. of the JMZO, governing service stations, provides as follows:
>> 3. Access to roads shall be at least two hundred (200) feet from the intersection of any street.
>> . . . .
>> 5. Fuel pumps shall be at least twenty-five (25) feet from any ultimate street right-of-way.
> Notwithstanding the above provisions, we note that the record is confusing in its repeated references to a 50 foot front setback requirement that does not appear to be expressly stated in those portions of the JMZO governing the VC District and service stations.

will improve safety and convenience for its patrons and is necessary for the continued viability of its service station operation. For the foregoing reasons, coupled with what M & M alleges to be the Township's failure to present evidence that the proposed canopy would prove detrimental to the public health, safety and welfare, M & M contends it has met all necessary requirements for both a special exception and a variance. After having reviewed the record, we disagree and find that substantial evidence supports Common Pleas' denial of M & M's request.

Turning first to M & M's special exception application, we note Common Pleas' determination that, pursuant to the JMZO, the proposed canopy could not properly be deemed either an expansion of a nonconforming use or an expansion of a nonconforming structure (herein, the gas pumps, lights and concrete island situate within the front yard setback area, that existed prior to the proposed new canopy). On the contrary, Common Pleas classifies the proposed canopy as a new structure, based upon the Board's conclusion of law No. 2 that M & M's "former light poles and concrete islands were not used in the construction of the new canopy and that their former existence would not qualify as nonconforming structures which could be enlarged." As a new structure, any such canopy, notes Common Pleas in distinguishing the present case from *Grubb Appeal,* 395 Pa. 619, 151 A.2d 599 (1959), would have to comply with applicable zoning regulations, in this case, the JMZO.

In any event, Common Pleas, although conceding that precedent allows for modernization of a nonconforming use which may involve expansion through building new structures, cautions that such expansion may be thwarted where found to be violative of applicable zoning law or detrimental to public health, safety and welfare, as was properly concluded herein based upon testimony from neighborhood protestants. We concur with Common Pleas that this case centers around a dimensional, rather than a use, nonconformity. Repeatedly, in such cases, this Court has reasoned that where the nonconformity is solely dimensional in nature, there is absolutely no

requirement that the property affected by the zoning ordinance be allowed to expand. *Miller & Son Paving, Inc. v. Wrightstown,* 499 Pa. 80, 451 A.2d 1002 (1982).

The foregoing *Miller Paving* rationale, distinguishing dimensional from use nonconformity, was aptly applied by this Court in *Eureka Stone Quarry, Inc. Appeal,* 115 Pa.Commonwealth Ct. 1, 539 A.2d 1375, *petitions for allowance of appeal denied,* 520 Pa. 599, 552 A.2d 253 (1988), a case which raised issues strikingly similar to those in the present matter. Specifically, in *Eureka,* appellant sought a variance to quarry stone from certain sides of its quarry that are situate in what local zoning ordinances (1971 and 1976 township ordinances and the 1983 JMZO) had designated a setback area. Appellant argued that because it had extracted stone from this location prior to enactment of that section of the JMZO prohibiting this activity, it should be allowed to continue doing so, notwithstanding the ordinance, on the basis of expanding a nonconforming use. This Court disagreed, stating:

> Even if Eureka had been quarrying on the northeast and northwest faces on the effective date of the 1971 ordinance, Eureka would still have had no right to continue the incursion into the setback areas. *Miller & Son Paving, Inc. v. Wrightstown Township,* 499 Pa. 80, 451 A.2d 1002 (1982) has held, 'a property owner does not have a vested right under the doctrine of natural expansion to extend a nonconforming setback beyond that which existed at the time the new ordinance was passed.' Id. at 92, 451 A.2d at 1008.

*Eureka,* 115 Pa.Commonwealth Ct. at 9, 539 A.2d at 1379.

The foregoing reasoning is equally applicable to the present case where, unarguably, either canopy M & M proposes would encroach into the mandatory setback area.

■  As to M & M's variance request, we find that substantial evidence of record supports Common Pleas' determination that the necessary criteria for a variance pursuant to Section 910.2 of the Pennsylvania Municipalities Planning Code

(MPC)[3] were not met. Precedent has established that a zoning variance is granted only in exceptional circumstances. *Pilot Oil Corp. Appeal,* 86 Pa.Commonwealth Ct. 23, 483 A.2d 1049 (1984). The requirements for a variance are articulated with great clarity in *Eureka,* as follows:

> Generally, an applicant for a variance must establish that there are unique physical circumstances peculiar to particular property and that unnecessary hardship is due to such conditions, that the property cannot be developed in strict conformity with the provision of the zoning ordinance, that such unnecessary hardship has not been created by the applicant, that the variance will not be detrimental to the public welfare, and that the variance will represent the minimum variance necessary to afford relief. *Township of Salisbury v. Rummel,* 44 Pa. Commonwealth Ct. 581, 406 A.2d 808 (1979).

*Eureka,* 115 Pa.Commonwealth Ct. at 16, 539 A.2d at 1382.

The record indicates that M & M in the present matter, as did the appellant in *Eureka,* failed to present substantial evidence establishing either unique physical characteristics of its property that would prevent relocation of the pumping island to comply with setback requirements or that M & M could not make reasonable use of its property while keeping within the parameters of JMZO dimensional restrictions. Moreover, the fact of placing a canopy with improved lighting over gasoline pumps, while arguably a desirable, modernizing addition, was not established by M & M to be so critical as to subject its business operation to unnecessary hardship were the canopy not permitted. An analogous situation was presented in *Atlantic Refining v. Zoning Hearing Board,* 133 Pa.Commonwealth Ct. 261, 575 A.2d 961 (1990), wherein the appellee, Atlantic Refining & Marketing Company, also sought a variance to modernize its facilities by placing a canopy over gasoline pumps, which canopy would encroach 27 feet into a 35 foot rear yard setback. This Court therein denied the variance and stated:

3. Act of July 31, 1968, P.L. 805 *as amended,* added by Section 89 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2.

Essentially, appellee is alleging a type of economic hardship, which has traditionally been found by this Court to be insufficient to warrant the granting of a variance. Diminution of profitability has been long considered as legally insufficient to justify a variance. *Pilot Oil Corporation v. Zoning Hearing Board of West Hanover Township*, 86 Pa.Commonwealth Ct. 23, 483 A.2d 1049 (1984). In Pilot, appellee also requested a variance to construct a canopy over its gasoline pumps, but failed to meet its burden of proving unnecessary hardship by showing that the property could be used in a reasonable manner within the restrictions of the ordinance and not that a proposed use is more desirable.

Financial hardship, short of rendering a property practically valueless, is insufficient to warrant the grant of a variance. *Glazer v. Zoning Hearing Board of Worcester Township*, 55 Pa.Commonwealth Ct. 234, 423 A.2d 463 (1980). We find this principle to be applicable in the present matter. The record does not support appellee's contention that continued economic viability depends solely on the absence or presence of canopies, or that there is no other feasible business use of appellee's property possible without granting the variance. *Mobil Oil Corporation v. Zoning Hearing Board of Tredyffrin Township*, 100 Pa.Commonwealth Ct. 480, 515 A.2d 78 (1986).

*Atlantic Refining*, 133 Pa.Commonwealth Ct. at 266–67, 575 A.2d at 963–64.

Based on the foregoing analysis, we reach an identical result in the present matter. Finally, significant evidence of record in the form of testimony from numerous community members supports Common Pleas' decision that granting the variance would have a negative impact on the health, safety and welfare of the community and would alter the character of the neighborhood. In this regard, community protestants testified that the canopy would commercialize the service station's overall appearance, in marked incongruity with the planned "rural, residential, small town" flavor of the historic Washington Crossing Village District.

Accordingly, in consideration of the above discussion, the order of Common Pleas is affirmed.

## ORDER

AND NOW, this 18th day of March, 1993, the order of the Court of Common Pleas of Bucks County in the above-captioned matter is affirmed.