**NARBERTH JKST TENNIS CLUB, INC., Appellant**

v.

**ZONING HEARING BOARD OF BOROUGH OF NARBERTH and Borough of Narberth.**

Commonwealth Court of Pennsylvania.

Argued Oct. 30, 2007.

Decided Dec. 7, 2007.

Denis M. Dunn, Media, for appellant.

Frederick M. Wentz, Norristown, for appellee, Zoning Hearing Board of Borough of Narberth.

Marc D. Jonas, Blue Bell, for appellee, Borough of Narberth.

BEFORE: SMITH–RIBNER, Judge, LEAVITT, Judge, KELLEY, and Senior Judge.

OPINION BY Judge LEAVITT.

Narberth JKST Tennis Club, Inc. (Tennis Club) appeals an order of the Court of Common Pleas of Montgomery County (trial court) dismissing its appeal of a decision of the Zoning Hearing Board of the Borough of Narberth (Board). In doing so, the trial court affirmed the Board's denial of the Tennis Club's application to build a structure enclosing two outdoor tennis courts. In this case, we consider whether the Board erred in determining that the Tennis Club does not have a right to construct an enclosure over its tennis courts without obtaining a variance.

The Tennis Club leases property at 610–630 Montgomery Avenue in Narberth, which is owned by 612 Montgomery Associates, LLC. The property has been used as a tennis club since the 1920s, pre-dating the Borough of Narberth's adoption of a zoning code in the 1940s. The property is located in two adjoining zoning classifications, Residential R–2 and Commercial.

This litigation concerns four open-air clay tennis courts located along Haverford Avenue, which are situated within both zones, but primarily in the Residential R–2 zone.[1] These tennis courts are nonconforming as to use in the residential zoning area and as to setback, coverage and parking requirements in both zoning districts.[2] The courts currently extend all the way to the edge of the property. The Tennis Club filed an application for a permit to build a permanent structure enclosing two of the outdoor tennis courts and to remove one of the existing courts. The Tennis Club asserted that "no zoning relief is required to enclose the two tennis courts as proposed." Reproduced Record at 53a (R.R. ___). In the alternative, the Tennis Club requested variances to enclose the courts as a natural expansion of a nonconforming use. The Zoning Officer denied the application.

The Tennis Club appealed to the Board, and a hearing was held on November 21, 2005. At the beginning of the hearing, counsel for the Tennis Club withdrew its request for variances. The Tennis Club then presented testimony from Adrian Castelli, half owner of the Club.

Castelli described the four open-air clay courts as having a brick perimeter on the ground surrounding the clay structure; an eight foot high fence surrounding three quarters of the perimeter; net posts embedded in concrete; lines affixed to the clay surface; and retaining walls on one end of the courts that are three and a half or four feet high. The Tennis Club would like to remove one of the end courts and

**1.** The Tennis Club consists of several buildings, parking areas, the open-air clay courts and other courts that are open-air part of the year and enclosed within a temporary "bubble" the rest of the year.

**2.** The Tennis Club correctly points out that neither the Board nor the trial court specified what the nonconformities are. However, the parties agree that the courts are dimensionally non-conforming. We note that Section 124–18 of the Narberth Zoning Code provides that in the R–2 district, "[t]here shall be a front yard, the depth of which shall be at least twenty-five (25) feet." Section 124–61 of the Zoning Code, which applies to commercial districts, requires a front yard of at least 10 feet. The tennis courts as currently situated violate the front yard requirements for both districts. As far as coverage, the relevant section, which is Section 124–17 of the Zoning Code, pertains to the R–2 district and limits the building area to no more than 35% of the lot area. Parking requirements are not relevant to this appeal.

fill in the area with landscaping. The Tennis Club would also like to enclose two of the remaining clay courts.

Castelli described the proposed enclosure as a metal frame, like a ribcage, with two layers of semi-opaque fabric stretched over the frame. The fabric is white, teflon-coated nylon. The metal frame would be attached to the ground through concrete footings extending approximately five feet into the ground. Two to four of the concrete footings would be located in the front yard setback. The enclosure, as proposed, would be 120 feet by 120 feet and would be 14 feet high at its lowest point and 32 feet high at its highest point over the center of the courts.[3] Castelli testified that he planned to "move lines, move net posts" on the tennis courts to accommodate the new enclosure. Board Hearing, 11/21/05, at 22; R.R. 13a.

Currently, the clay courts are unlit, and so they can be used only from sunup to sundown. However, the proposed enclosure would be heated and well-lit, so that players could play well after sundown, until the Tennis Club closes at 10:30 p.m. The players would also be able to play year-round. The Tennis Club is open every day of the year with the exception of some holidays.

The Tennis Club also presented the testimony of Scott Compton, a registered architect who prepared a proposed plan. He explained that the proposed enclosure, when completed, will actually sit further back from Haverford Avenue than the current courts sit. The current setback runs from four feet four inches to zero. The new setback will be from five feet ten inches to two feet ten inches.[4]

Following the hearing, the Board affirmed the determination of the Zoning Officer denying the Tennis Club's application. In its opinion, the Board acknowledged the Tennis Club's argument that the tennis courts qualify as a "structure" under the Zoning Code, and that by building its proposed structure within the footprint of the existing courts and fence, it is merely expanding a nonconforming structure without increasing the current nonconforming setbacks and coverage. However, the Board stated that "[a]ssuming *arguendo* that the existing tennis courts are structures, the Board is of the opinion that the proposed metal frame and tensile fabric structure is not an extension of the tennis court structures, but in fact is a new structure of an entirely different kind than the tennis courts." Board Opinion at 3. As such, the Board ruled that the new structure would have to comply with setback requirements. Accordingly, it could only be constructed by grant of a variance. However, the Tennis Club had withdrawn its request for a variance.

 The Tennis Club appealed,[5] and the trial court dismissed the appeal. The trial court concluded that the proposed enclosure is a new structure with new concrete footers to be installed in the setback, where no footers currently exist, to provide support for the enclosure.[6] The trial

---

3. Section 124–80 of the Narberth Zoning Code requires that "no building shall exceed thirty-five (35) feet in height."

4. Numerous members of the community spoke out against the proposed enclosure. None spoke in favor of it.

5. The Borough of Narberth intervened at this point.

6. The Tennis Club correctly points out that the trial court appears to have mistakenly believed that the concrete footers would be placed closer to the street than the current courts sit, thereby increasing the degree of nonconformity. However, the evidence does not support such a finding; the evidence shows that the concrete footers would be placed further back from the street than the courts currently sit.

court held that "[t]he encroachment into the setback, even though the non-conformity herein is only dimensional, requires a variance, and [the Tennis Club] chose not to pursue such relief." Trial Court Opinion at 4. The trial court also addressed the Tennis Club's argument that the existing tennis courts qualify as "structures" under the Narberth Zoning Code and, as such, establish the nonconforming setbacks and coverages for purposes of an enclosure over the courts. Because the proposed enclosure will not extend or increase the existing, and lawful, dimensional nonconformities, the Tennis Club argued that its proposed enclosure must be permitted. The trial court rejected the Tennis Club's argument as "nonsensical," noting that under the Tennis Club's interpretation, "almost every driveway, sidewalk and curb in the Borough of Narberth would constitute a structure and, hence, could be covered with a permanent enclosure affixed to the ground." Trial Court Opinion at 5. Finally, the trial court found that the enclosure's encroachment into the setback and massive size pose a significant potential adverse effect. Therefore, based on a "common sense reading of the Narberth Zoning Code" together with the importance of setbacks, the trial court found that the enclosure could not be constructed as of right. Trial Court Opinion at 7. The present appeal followed.[7]

On appeal, the Tennis Club raises two main issues. First, the Tennis Club argues that the definition of "structure" contained in the Pennsylvania Municipalities Planning Code[8] (MPC), which was adopted by the Narberth Zoning Code, includes within its scope man-made clay tennis courts supported by a brick founda-tion and enclosed by a chain link fence. As such, the tennis courts are a structure and establish the nonconforming setbacks and coverage. Second, the Tennis Club argues that a variance is not required to enclose a nonconforming tennis court structure when the enclosure will not increase any nonconformities.

■ We turn first to the Tennis Club's argument that the tennis courts qualify as a "structure" under the Narberth Zoning Code. Section 124–1A of the Narberth Zoning Code provides that the word "building" includes the word "structure." On November 11, 1996, the Borough of Narberth passed Ordinance No. 834, amending the Narberth Zoning Code. Therein, the Borough adopted the definition of structure contained in the MPC. "Structure" is defined in Section 107(a) of the MPC, 53 P.S. § 10107(a), as "any man-made object having an ascertainable stationary location on or in land or water, whether or not affixed to the land."

■ The Tennis Club argues that the tennis courts qualify as structures, which are treated the same as buildings under the Narberth Zoning Code, and therefore, the existing tennis courts establish the nonconforming setbacks and coverages. Narberth Borough and the Board do not dispute that the tennis courts qualify as structures. Based on the broad definition of "structure" found in the MPC, which has been incorporated into the Narberth Zoning Code, we agree with the Tennis Club that the clay tennis courts are a structure. Accordingly, they do establish existing nonconforming setbacks and coverages.

7. Where the trial court receives no additional evidence, our standard of review is to determine whether the Board committed an abuse of discretion or an error of law. *Feldman v.*

*Zoning Hearing Board,* 89 Pa.Cmwlth. 237, 492 A.2d 468, 469 (1985).

8. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101–11202.

We now turn to the Tennis Club's second issue. The Tennis Club argues that, under the law, it is permitted to enclose the tennis court structure, which is nonconforming as to setbacks and coverage requirements, because the proposed enclosure will not increase any dimensional nonconformities. The Borough of Narberth and the Board counter that the proposed enclosure is a new structure, requiring variances.[9]

■ The law provides that generally, a nonconforming commercial or industrial use is permitted to expand because expansion or modernization to meet new needs is essential to most commercial or industrial uses. *Miller & Son Paving, Inc. v. Wrightstown Township*, 499 Pa. 80, 91, 451 A.2d 1002, 1007 (1982). However, *nonconforming structures* have no protected right to expand in violation of applicable regulations. *Id.*

The Tennis Club relies on *Nettleton v. Zoning Board of Adjustment of Pittsburgh*, 574 Pa. 45, 828 A.2d 1033 (2003) in support of its position that it is permitted to build the enclosure. *Nettleton* involved a prior nonconforming commercial one-story building that occupied almost the entire lot in violation of all yard and setback regulations. The owners sought a permit to expand the existing building vertically to a height of three stories. In rendering its decision in *Nettleton*, the Pennsylvania Supreme Court relied on its decision in *In re Yocum*, 393 Pa. 148, 141 A.2d 601 (1958).[10] The Court explained its holding in *Yocum* as follows:

> ... in cases where the regulation at issue controls only the horizontal location of the building footprint on the lot and the nonconformity concerns only an encroachment of the building footprint within an area of the lot from which building footprints are prohibited by later-enacted regulation, then *a vertical addition to the building creating no further encroachment of the footprint into the prohibited area is a permitted use*. When these conditions are met and the regulations are materially similar to those here involved, the landowner must be granted leave to construct such a vertical addition. A variance is not required because the proposal contemplates a permitted use.

*Nettleton*, 574 Pa. at 54, 828 A.2d at 1039 (emphasis added). Applying *Yocum* to the facts before it, the *Nettleton* court held that the two-story vertical addition to the building was permitted by right because the addition would not increase the degree of nonconformity as it would not affect the

9. The Borough and Board also argue that the proposed enclosure cannot be built as of right because it will expand the nonconforming use, requiring the grant of a special exception under Section 124–89 of the Zoning Code. However, neither the Board nor the trial court addressed this issue, and we will not address it further.

10. In *Yocum*, a residential home built before the passage of the zoning ordinance violated front yard and side yard setback requirements. The owners sought an extension of the front porch upward to conform in height with the rest of the building and an extension of the second floor forward to the current edge of the first floor. The court noted that the vertical construction did not violate the zoning ordinance, which was silent on a maximum height for buildings, and the horizontal forward construction of the second floor would not violate the setback any more than the first floor of the building already violated it. The court approved the building permit without the need for a variance or exception because the expansion was "a logical, reasonable and natural structural change in the building which neither increases any nonconformity of its use nor violates any provision of the zoning ordinance and in nowise affects the general welfare of the neighborhood or of the adjoining property owners." *Yocum*, 393 Pa. at 155, 141 A.2d at 605–606.

building's existing footprint. Accordingly, the addition would not increase the encroachment of the building within the required front or side yard setback. *Id.* at 55, 828 A.2d at 1039.[11]

The Tennis Club argues that the instant case is governed by *Yocum* and *Nettleton.* Because the tennis courts constitute a structure under the Narberth Zoning Code, and the Zoning Code does not prohibit vertical construction other than to limit building height to 35 feet, the Tennis Club contends that it has a right to vertically construct to a height of 32 feet the proposed enclosure which will be located within the existing footprint of the clay courts.

However, the trial court relied upon *M & M Sunoco, Inc. v. Upper Makefield Township Zoning Hearing Board,* 154 Pa. Cmwlth. 316, 623 A.2d 908 (1993). In *M & M Sunoco,* the owner of a gas station requested a special exception and variance to build a canopy over new gasoline pumps. The gas station was a nonconforming use and its original concrete pump island violated the front yard setback requirement. The owner replaced the underground storage tanks and sought to install new computerized gas pumps covered by a canopy. The owner argued that its new canopy would not extend any further into the setback than the edge of the concrete pumping island that had replaced

the old island. The common pleas court found that the canopy was not an expansion of a nonconforming structure (that is, gas pumps, lights and concrete island situated within the front yard setback). Rather, the canopy would be a new structure because the light poles and concrete island were not used in the canopy's construction and were not nonconforming structures that could be enlarged. We agreed with the trial court that the owner was building a new structure that had to comply with applicable zoning regulations. *Id.* at 911.

The Tennis Club argues that *M & M Sunoco* is not applicable because it dealt with a special exception and variance, neither of which the Tennis Club is seeking. The Tennis Club also argues that its proposed enclosure will become part of the existing tennis courts, and hence is not an entirely new structure.

We reject the Tennis Club's arguments. Its proposed enclosure will be a new structure completely different than the tennis courts.[12] *Yocum* and *Nettleton,* which the Tennis Club would have us apply in this case, both deal with *additions* to existing buildings. The Tennis Club is proposing to construct a new building that will be supported by new concrete footers and will be of a completely different type than the tennis courts. In fact, the Tennis Club will have to move the net posts and the lines on the courts in order to accommo-

---

**11.** *Nettleton* involved a zoning code regulation allowing for enlargement or expansion of a nonconforming structure so long as the expansion did not increase the degree of nonconformity or make the structure nonconforming in any other respect. Like the zoning code in *Yocum,* the Narberth Zoning Code is silent on expansion of nonconforming structures.

**12.** The Tennis Club contends that the new structure issue is a "red herring" because the tennis courts establish the nonconforming setbacks for the property and the proposal is "to

add to an existing structure." Tennis Club brief at 23–24. The Tennis Club also points to *Borough of Ingram v. Zoning Hearing Board of the Borough of Ingram,* 118 Pa.Cmwlth. 574, 545 A.2d 989 (1988) for the proposition that nonconforming setbacks establish the setbacks for additional new structures on the same lot. However, *Ingram* dealt with a request for a variance to build a garage on a residential lot, not with an asserted right to build a structure in the footprint of an existing structure without a variance as in the present case.

date the new building. We cannot agree with the Tennis Club that this is the type of extension or "addition" contemplated by *Yocum* and *Nettleton* that an owner must be permitted to construct as of right. Rather, it much more closely resembles the canopy in *M & M Sunoco* which was found to be a completely different structure.[13]

For the foregoing reasons, we hold that the Tennis Club is not permitted to construct its proposed enclosure as of right. Accordingly, we affirm the order of the trial court.

### ORDER

AND NOW, this 7th day of December, 2007, the order of the Court of Common Pleas of Montgomery County in the above-captioned case, dated December 13, 2006, is hereby AFFIRMED.

---

13. We note that the trial court made a determination that the "massive" proposed enclosure would have a significant potential adverse effect. However, the Tennis Club does not address this issue on appeal and based on our disposition of the case, we need not discuss it further.