IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Application of Sunflower      :
Farm, LLC                        : No. 815 C.D. 2016
                                   : Argued:  December 15, 2016
Appeal of: Sunflower Farm, LLC   :

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                 FILED:  March 28, 2017

Sunflower Farm, LLC (Applicant)[1] appeals the order of the Bucks County Court of Common Pleas (trial court) which affirmed the decision of the Lower Makefield Township (Township) Zoning Hearing Board (Board) denying its application for use and dimensional variances under the Township's Zoning Ordinance[2] necessary to use the property as an equine hospital.  We affirm.

---

[1] Applicant is a Pennsylvania limited liability corporation with two members: veterinarians Dr. Amy Bentz and Dr. Brad Holmsten.  Bentz treats large animals such as horses and is the corporation's principal.

[2] Section 200-97 of the Township's Zoning Ordinance states:

> A.  The Board shall hear requests for variances where it is alleged that the provisions of this chapter inflict unnecessary hardship on

**(Footnote continued on next page…)**

Applicant is the equitable owner of the approximately 5-acre property located on Mirror Lake Road in the Township's R-1 Residential-Low Density zoning district. The configuration of the property resembles a "fat T," as it is approximately 200 feet wide at the roadway frontage and opens to approximately

---

**(continued…)**

the applicant. . . . The Board may grant a variance, provided that the following findings are made where relevant in a given case:

(1) That there are unique physical circumstances or conditions, including irregularity . . . of lot size or shape . . . peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of this chapter in the neighborhood or district in which the property is located.

(2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of this chapter and the authorization of a variance is therefore necessary to enable the reasonable use of the property.

(3) That such unnecessary hardship had not been created by the appellant.

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located nor substantially or permanently impair the appropriate use or development of adjacent property nor be detrimental to the public welfare.

(5) That the variance, if authorized, will represent the minimum variance which will afford relief and the least modification possible of the regulation in issue.

*See also* Section 910.2 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, added by Act of December 21, 1988, P.L. 1329, 53 P.S. §10910.2.

400 feet in the rear, with a length of approximately 600 feet. The property was acquired by the Township and housed the Satterthwaite Farmstead which consisted of 6 structures including a 2-1/2 story single family house, several barns, and other accessory buildings. The Township subdivided the farm into its present configuration. The property is adjacent to the Patterson Farm from which it was subdivided, with primarily single-family homes in the surrounding properties.

In 2003, the Township retained an architect who found that the residence is in significant disrepair and that the Township would need to spend $400,000.00 for exterior repairs with up to an additional $500,000.00 for structural repairs to the house and other accessory structures. Based on the report, the Township subdivided the property and listed it for sale in 2011, but no bids were submitted. In 2012, the Township again listed the property for sale and Applicant was the only bidder. Applicant entered into an agreement of sale with the Township to purchase the property on the condition that it restores the existing residential structure and restores the other structures subject to a façade easement approved by the Township.

Applicant seeks to acquire the property to construct an equine specialty care and hospital facility and submitted the application for use and dimensional variances. Applicant proposes to convert the existing residence into administrative and office space with a possible 550-foot addition and keep the existing "bank" barn, but remove the other structures and replace them with four barns and a new house at the rear of the property for Bentz and her family. The bank barn will be used for storage. Bentz testified that the configuration of the existing house is not conducive to current living standards because the rooms are small and that its conversion to professional offices will be significantly less

3

expensive than renovation for the residential use.  Fifteen off-street parking spaces will be in the rear of the building with an additional eight if necessary.  The Ordinance requires 123 off-street spaces for the proposed equine hospital, professional offices, and house and Applicant needs a variance from this requirement.[3]

To the left of the existing driveway, Applicant will construct a "mascot" barn of 900 square feet with 3 stalls that will house horses for educational purposes and will be used to provide blood transfusions to critical care horses.  Applicant will construct a "colic" or "critical care" barn of approximately 4,320 square feet with 7 stalls, which will be used to treat severely ill horses requiring constant care and supervision, and an "elective care" barn of 2,600 square feet and 18 stalls for the treatment of minor ailments and diagnostic services.  Applicant anticipates no more than 5 to 8 horses will be on the property at any time, which requires a variance from the limit of 2 per five acres.[4]  As proposed, the colic barn will have a side yard setback of 35 feet and the elective barn will have a side yard of 25 feet.  As a result, Applicant needs a dimensional variance from the 50-foot setback requirement.[5]

---

[3] Section 200-79.A.(16) states that minimum parking for a general business use is "one off-street parking space for every 250 square feet of gross floor area," and 200-79.A.(42) states that minimum parking for a veterinary hospital use is "one off-street parking space for every 150 square feet of gross floor area."

[4] Section 200-69.A.(11)(b) states that "[n]o more than two livestock units shall be permitted for every five acres of lot area."

[5] Section 200-69.A.(11)(c) states that "[a]ccessory structures for livestock housing or use shall be located only in the side or rear yards and no closer than 50 feet to any property line."

The new residence will be 1,800 square feet with an adjacent drive through garage. The existing driveway will be expanded for access to the elective care barn, the colic barn, and the residential garage. The existing and expanded driveway will be constructed of traditional asphalt while the proposed parking lot and residential driveway will consist of pervious materials. Due to the new buildings and driveway, Applicant will increase the impervious surface coverage of 28.74% which requires a variance from the Ordinance's limit.[6]

Applicant's plans include the construction of 3 underground storm water management facilities to address the retention of storm water on the property due to the proposed structure and impervious coverage. The plans propose discharge of any storm water into existing inlets along Mirror Lake Road.

A landscape buffer of fencing and vegetation will be concentrated along the southwest portion of the property to buffer vehicular lights to the residences adjacent to the property. However a variance is required as it is less than the buffer required by the Ordinance.[7]

The facility will provide 24/7 care with 2 sets of staff working 12-hour shifts, from 7:00 a.m. to 11:00 p.m. and 11:00 p.m. to 7:00 a.m. The staff will consist of Bentz, a veterinarian technician, 2 to 3 administrative staff and 8 to 14 barn staff. The horses would be "hand walked," based on their medical condition and would remain in their stalls other than during the daily walks.

---

[6] Section 200-19.A. limits impervious coverage on lots of more than 5 acres to 17%.

[7] Section 200-73.C.(1) states that "[b]uffer shall be provided wherever a nonresidential use abuts a residential use;" [t]he buffer shall be located on the nonresidential property and shall be located along the side and/or rear property lines which abuts the residential use;" and shall have a minimum width of 25 feet and the screened planted area shall be a minimum of 25 feet.

The use of the property as a specialty equine medical facility is not a permitted use in the R-1 zoning district.[8] Applicant's expert in land use planning, Kenneth Amey, testified before the Board and confirmed that the proposed use does not meet the specific definitions in the Ordinance. He testified that a general veterinary hospital which focuses on small animals is permitted in commercial zoning districts, but the equine medical care center use is not the same use and is

---

[8] Section 200-15.A. states that the following uses are permitted in the Township's R-1 zoning district: (1) agriculture; (2) single-family detached dwelling; (3) nursery/horticulture/greenhouse; (4) public recreational facility; and (5) uses and structures accessory to permitted uses including livestock in residential areas and residential accessory buildings and structures. Section 200-15.B. provides the following uses by special exception: (1) cemetery; (2) golf course; (3) library or museum; (4) nursing home; (5) place of worship; (6) public or private school; (7) utility; (8) riding stable; (9) bed-and-breakfast; (10) boarding; (11) family day care home occupation; and (12) accessory office home occupation. Section 200-15.C. provides the following conditional uses: (1) accessory farm business; (2) emergency services; and (3) farmland preservation development.

In turn, Section 200-68.A.(1) defines "agriculture" use as "[f]arming activities, including tilling of the soil, raising of vegetable or food crops and raising of livestock, horses, or poultry" and requires a minimum lot area of 5 acres; prohibits the storage of manure or other dust-producing substances within 150 feet of any property line; requires that any building in which farm animals are kept to be at least 150 feet from any adjoining lot line; and permits a single-family detached dwelling provided that it meets the lot area and dimension requirements.

Additionally, Section 200-68.A.(44) states:

> Veterinary hospital. A place where animals are given medical or surgical treatment. Boarding shall be prohibited except that animals or pets undergoing medical or surgical treatment if kept must be housed inside. Use of the facility for boarding is prohibited unless the use regulations for kennel are also met.

The veterinary hospital use is a permitted use in the C-1 Commercial-Neighborhood, C-2 Commercial-Highway Services, and C-3 General Business/Industrial zoning districts. The veterinary hospital use is permitted by special exception in the O-R Office/Research zoning district.

6

less intensive in noise and traffic and more outdoor-oriented. He stated that the proposed use is more conducive to the property because of the prior general agricultural and farming use. Applicant's proposed use will focus more on the surgical treatment and care of critically ill horses rather than a general veterinary practice.

Thomas Conoscenti and his wife Ellen, neighboring landowners (Objectors), intervened before the Board. Mr. Conoscenti testified that the property does not have unique physical characteristics warranting the proposed use variance and that there is no proof that it could not be financially rehabilitated for residential use. He described the general residential nature of the surrounding area and noted the possible environmental, noise, and traffic impact on the property and surrounding area if the proposed use is approved. He stated that the proposed use is akin to a commercial business, which is not permitted in the R-1 district, and presented evidence that all other large animal care facilities in Pennsylvania and New Jersey are in isolated areas and not in close proximity to general residential neighborhoods.[9]

In disposing of the application, the Board noted that while Applicant sought approval of several dimensional variances, the most significant request was the use variance under Section 200-15 to use the property as an equine medical

---

[9] The Board also noted that a number of other residents testified in opposition to the application citing: (1) concerns of the adverse impact of the commercial use on the residential character of the property and the surrounding properties; (2) concerns of increased impervious surface coverage and any adverse impact on storm water drainage onto neighboring properties; (3) concerns of vehicular traffic along existing streets and roads and vehicular access to and from the property based on the location of the driveway; (4) lack of significant research into the viability of rehabilitating the existing residential building and other structures for residential use; and (5), in general, lack of evidence to support the grant of the variances. The Board also noted that several residents testified in support of the application, but that they were in the minority.

care facility in a residential zoning district. Applicant relied on the irregular "T" shape to establish the required unnecessary hardship. However, the Board explained that this shape was created by the Township by subdividing the parcel from the surrounding farm property, which is all owned by the Township. As a result, the purported hardship was self-inflicted by the current owner.

The Board explained that "while the Applicant intends to use the property in a manner that would be less intrusive and more comparable to the current agricultural use, the proposed use of an equine medical center is substantially similar to a general veterinary practice that is permitted in other zoning districts." Board 10/24/12 Decision at 18. The Board found that "[t]he only distinction between a general veterinary practice and the Applicant's proposed equine medical center is the treatment of horses by the Applicant versus the general medical care of small animals." *Id.*

The Board also explained that "[w]hile the costs to renovate and repair the existing residential building may be high, the evidence presented by Applicant . . . does not substantiate the granting of the requested variance." Board 10/24/12 Decision at 18. The Board concluded that "[t]he property can be used in accordance with the current zoning regulations," and it "was not persuaded that the property could not be renovated and subsequently used again as a residential home." *Id.*

The Board expressed its "concerns that the proposed use with the various medical barn structures was being 'squeezed' into a small parcel, consisting of five acres." Board 10/24/12 Decision at 19. The Board was also "not persuaded that the proposed use is more akin to agricultural use than a general business enterprise." *Id.* As a result, the Board denied Applicant's use variance

8

request and denied the various dimensional variance requests as moot. Objectors intervened in Landowner's appeal in which the trial court affirmed the Board's decision.

In the instant appeal of the trial court's order,[10] Landowner claims that the Board erred in denying a use variance under Section 200-15 of the Township's Zoning Ordinance, and in denying an interpretation of or variances from the additional relevant requirements of Sections 200-19, 200-69, 200-73, and 200-79 of the Zoning Ordinance. We disagree.

Our review of the record and the relevant law leads us to conclude that the Board did not err in determining that the proposed use is more like the veterinary hospital use than the agriculture use provided in the Zoning Ordinance. We defer to the Board's interpretation of the Ordinance.

> [A] zoning hearing board is the entity charged with the interpretation and application of the zoning ordinance. It is well settled that a zoning hearing board's interpretation of its own zoning ordinance is entitled to great weight and deference from a reviewing court. This principle is also codified in Section 1921(c)(8) of the Statutory Construction Act of 1972, 1 Pa. C.S. §1921(c)(8). The

---

[10] In a land use appeal where the trial court does not take additional evidence, our review is limited to determining whether the Board abused its discretion or committed an error of law. *Tidd v. Lower Saucon Township Zoning Hearing Board*, 118 A.3d 1, 7 n.4 (Pa. Cmwlth. 2015). Our review of the Board's factual determinations is limited to determining whether the Board's findings are supported by substantial, record evidence. *Nettleton v. Zoning Hearing Board of Pittsburgh*, 828 A.2d 1033, 1041 n.10 (Pa. 2003); *Haas v. Zoning Board of Adjustment of Philadelphia*, 169 A.2d 287, 288 (Pa. 1961). The Board as factfinder is the sole judge of credibility and evidentiary weight and has the power to reject even uncontradicted testimony. *Valley View Civic Association v. Zoning Board of Adjustment*, 462 A.2d 637, 642 (Pa. 1983); *Taliaferro v. Darby Township Zoning Hearing Board*, 873 A.2d 807, 808-09 (Pa. Cmwlth. 2005). It is the function of the Board to weigh the evidence before it, and a reviewing court may not substitute its interpretation of the evidence for that of a zoning hearing board. *Id.* Appellate review of the Board's findings of fact is limited to a substantial evidence analysis. *Haas*.

basis for the judicial deference is the knowledge and expertise that a zoning hearing board possesses to interpret the ordinance that it is charged with administering.

*Tri-County Landfill v. Pine Township Zoning Hearing Board*, 83 A.3d 488, 510 (Pa. Cmwlth. 2014) (citations omitted). As a result, we concur with the Board's determination that the proposed equine hospital use is not a permitted "agricultural" use in the R-1 district but, rather, a veterinary hospital use, so a use variance was necessary.[11]

Additionally, Applicant did not persuade the Board that the residential use of the property is so prohibitively expensive as to warrant the grant of a use variance. As this Court has explained:

> To demonstrate the requisite unnecessary hardship, an applicant must prove either: (1) the physical characteristics of the property are such that it could not in any case be used for any permitted purpose, or that it could only be used for such purpose at prohibitive expense; or (2) the characteristics of the property are such that the lot has either no value or only distress value for any purpose permitted by the ordinance. Thus, the hardship exception justifying the grant of a variance is only triggered when it is shown that compliance with the

---

[11] We disagree with Applicant's assertion that the Board acted arbitrarily or capriciously in this regard. As noted above, the Board had the power to reject even uncontradicted testimony. *Valley View Civic Association*, 462 A.2d at 642; *Taliaferro*, 873 A.2d at 808-09. Moreover, "[a] capricious disregard occurs only when the fact-finder deliberately ignores relevant, competent evidence. Capricious disregard of evidence is a deliberate and baseless disregard of apparently reliable evidence. *Taliaferro*, 873 A.2d at 814 (citations omitted). *See also Wintermyer Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 812 A.2d 478, 487-88 (Pa. 2002) ("Even in such context, however, this limited aspect of the review serves only as one particular check to assure that the agency adjudication has been conducted within lawful boundaries--it is not to be applied in such a manner as would intrude upon the agency's fact-finding role and discretionary decision-making authority."). We discern no error in the Board's credibility determinations in this matter.

10

zoning ordinance could render the property practically useless.

> In addition, the reasons for granting a variance must be substantial, serious, and compelling. The burden of an applicant seeking a zoning variance is heavy, and variances should be granted sparingly and only under exceptional circumstances. A variance will not be granted simply because a zoning ordinance deprives the owner of the most lucrative or profitable uses of the property. Economic hardship short of rendering the property valueless does not justify the grant of a variance.

*Oxford Corporation v. Zoning Hearing Board of the Borough of Oxford*, 34 A.3d 286, 295-96 (Pa. Cmwlth. 2011) (citations and footnote omitted). The Board chose not to accept Applicant's assertion that the renovation of the farmhouse was cost prohibitive and that it could only be rehabilitated for an office use, and this determination will not be disturbed by this Court in this appeal.

Moreover, even under the more relaxed standard for establishing unnecessary hardship for the requested dimensional variances, *some* unnecessary hardship must be shown. *Hertzberg v. Zoning Board of Adjustment of the City of Pittsburgh*, 721 A.2d 43, 50 (Pa. 1998); *Tidd v. Lower Saucon Township Zoning Hearing Board*, 118 A.3d 1, 8 (Pa. Cmwlth. 2015). However, because the Board did not grant the use variance, it did not need to address Applicant's request for variances from the other Zoning Ordinance requirements and we need not address Applicant's claims in this regard in this appeal. *See, e.g., In re Avanzato*, 403 A.2d 198, 200 n.3 (Pa. Cmwlth. 1979) ("[S]ince the owners are not entitled to a use variance, we need not consider the application for dimensional variances regarding which the owners introduced no evidence.").

11

Accordingly, the trial court's order is affirmed.


_____
MICHAEL H. WOJCIK, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Application of Sunflower      :
Farm, LLC                              : No. 815 C.D. 2016
                                            :
Appeal of: Sunflower Farm, LLC     :

## O R D E R

AND NOW, this 28th day of March, 2017, the order of the Bucks County Court of Common Pleas, dated April 19, 2016, at No. 2013-09041, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge